**McGuireWoods LLP**
Matthew C. Kane (SBN #171829)
  Email: mkane@mcguirewoods.com
Sabrina A. Beldner (SBN #221918)
  Email: sbeldner@mcguirewoods.com
Sylvia J. Kim (SBN #258363)
  Email: skim@mcguirewoods.com
Amy E. Beverlin (SBN #284745)
  Email: abeverlin@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA 90067-1501
Telephone: 310.315.8200
Facsimile: 310.315.8210

Attorneys for Defendant
HALLIBURTON ENERGY SERVICES, INC.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS GUERRERO, an individual, on behalf of himself, all others similarly situated and on behalf of the general public,<br><br>    Plaintiff,<br><br>  vs.<br><br>HALLIBURTON ENERGY SERVICES, INC., a corporation; and DOES 1 through 100, inclusive,<br><br>    Defendants. | CASE NO. 1:16-cv-1300-LJO-JLT<br><br>**DEFENDANT'S REPLY IN SUPPORT OF *PROTECTIVE* MOTION TO STAY ACTION PENDING U.S. SUPREME COURT DECISION OR, ALTERNATIVELY, PENDING APPELLATE REVIEW OF ANY DENIAL OF DEFENDANT'S PENDING MOTION TO COMPEL INDIVIDUAL ARBITRATION (DKT. #29):**<br><br>**(1) SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE**<br><br>**(2) MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: July 12, 2017<br>Time: 8:30 a.m.<br>Ctrm.: 4<br>Judge: Hon. Lawrence J. O'Neill |

91453176.4

DEFENDANT'S REPLY IN SUPPORT OF *PROTECTIVE* MOTION TO STAY ACTION PENDING U.S. SUPREME COURT DECISION OR, ALTERNATIVELY, PENDING APPELLATE REVIEW OF ANY DENIAL OF DEFENDANT'S PENDING MOTION TO COMPEL INDIVIDUAL ARBITRATION (DKT. #29)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE .......................................................... iv

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.    INTRODUCTION ................................................................................................... 1

II.   IF THE COURT IS INCLINED TO DENY THE MTCA BASED ON *MORRIS*,
      THEN THIS ACTION SHOULD BE STAYED PENDING THE SUPREME
      COURT'S FORTHCOMING DECISION .................................................................... 2

      A.   THE COURT'S INHERENT AUTHORITY TO STAY THIS ACTION IS BROAD .................. 2

      B.   THE EFFICIENCY AND ECONOMY THAT WILL BE SERVED BY GRANTING A
           STAY FAR OUTWEIGH ANY POTENTIAL HARM THAT MAY RESULT TO
           PLAINTIFF ................................................................................................... 4

      C.   HESI WILL SUFFER SUBSTANTIAL HARDSHIP IF IT MUST PROCEED WITH
           LITIGATING CLASS ACTION CLAIMS THAT ARE ULTIMATELY SUBJECT TO AN
           ENFORCEABLE ARBITRATION AGREEMENT THAT REQUIRES THOSE CLAIMS
           TO BE ARBITRATED ON AN INDIVIDUAL BASIS ...................................................... 6

      D.   THE REQUESTED STAY IS RELATIVELY BRIEF AND CERTAINLY NOT
           INDEFINITE ................................................................................................... 9

III.  ALTERNATIVELY, IF THE COURT DENIES HESI'S MTCA, THIS ACTION
      SHOULD BE STAYED PENDING HESI'S SEEKING AND EXHAUSTION OF
      APPELLATE REVIEW OF THAT DECISION ............................................................ 10

IV.   CONCLUSION .................................................................................................. 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Alvarez v. T-Mobile USA, Inc.*,
  2010 WL 5092971 (E.D. Cal. Dec. 7, 2010) ................................................................7, 8

*In re Am. Apparel, Inc. S'holder Derivative Litig.*,
  2012 WL 9506072 (C.D. Cal. July 31, 2012) ...............................................................5, 6

*Amini v. AUS Mktg. Research Sys., Inc.*,
  2016 WL 7647690 (C.D. Cal. Feb. 26, 2016) ...................................................................9

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2010) .......................................................................................................3, 8

*Aten Int'l Co., Ltd v. Emine Tech. Co.*,
  2010 WL 1462110 (C.D. Cal. Apr. 12, 2010) ...................................................................4

*C.B.S. Employees Fed. Credit Union v. Donaldson*,
  716 F. Supp. 307 (W.D. Tenn. 1989) ...............................................................................7

*Cashon v. Kindred Healthcare Operating, Inc.*,
  2016 WL 6611031 (N.D. Cal. Nov. 9, 2016) .................................................................5, 6

*CMAX, Inc. v. Hall*,
  300 F.2d 265 (9th Cir. 1962) .........................................................................................5, 9

*Coppernoll v. Hamcor., Inc.*,
  2017 WL 446315 (N.D. Cal. Jan. 17, 2017) .....................................................................3

*Daugherty v. Solarcity Corp.*,
  2017 WL 386253 (N.D. Cal. Jan. 26, 2017) .....................................................................3

*Delphi Connection Sys., LLC v. Koehlke Components, Inc.*,
  2012 WL 12895680 (C.D. Cal. Oct. 17, 2012) .................................................................5

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007) ..........................................................................................4

*Doe v. Swift Transp., Inc.*,
  2017 WL 758279 (D. Ariz. Feb. 24, 2017) .....................................................................3, 7

*Ernst & Young v. Morris*,
  U.S. Sup. Ct. Case No. 16-300 ............................................................1, 2, 3, 4, 5, 7, 8, 9, 10

*Gabriella v. Wells Fargo Fin., Inc.*,
  2009 WL 188856 (N.D. Cal. Jan. 26, 2009) .....................................................................8

*Gong-Chun v. AETNA, Inc.*,
  2010 WL 1980175 (E.D. Cal. May 17, 2010) .................................................................8, 9

*Kaltwasser v. Cingular Wireless LLC*,
    2010 WL 2557379 (N.D. Cal. June 21, 2010) ..................................................7

*Lamar Co., LLC v. Continental Cas. Co.*,
    2007 WL 81876 (E.D. Wa. Jan.8, 2007)........................................................6

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936)..................................................................................4, 9

*Liberty Surplus Ins. Corp. v. IMR Contractors Corp.*,
    2009 WL 1010842 (N.D. Cal. Apr. 14, 2009) ..............................................5

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005)...................................................................8, 9

*Minor v. FedEx*,
    2009 WL 1955816 (N.D. Cal. July 6, 2009) ..........................................6, 8, 9

*Research in Motion, Ltd. v. Visto Corp.*,
    545 F. Supp. 2d 1011 (N.D. Cal. 2008) ........................................................5

*Rivera v. Saul Chevrolet, Inc.*,
    2017 WL 1862509 (N.D. Cal. May 9, 2017) ..............................................3, 4

*Smith v. Legal Helpers Debt Resolution, LLC*,
    2012 WL 12863172 (W.D. Wash. Apr. 24, 2012)........................................5, 7

*Sorensen v. The Black & Decker Corp.*,
    2007 WL 2696590 (S.D. Cal. Sept. 10, 2007) ...............................................5

*In RE: Sprouts Farmers Market, Inc. Employee Data Security Breach Litig.*,
    2017 U.S. Dist. LEXIS 80323 (D. Ariz. May 24, 2017)..............................3

*Steiner v. Apple Computer, Inc.*,
    2008 WL 1925197 (N.D. Cal. Apr. 29, 2008) ..............................................7

*Yong v. I.N.S.*,
    208 F.3d 1116 (9th Cir. 2000)....................................................................2

*Zaborowski v. MHN Gov't Servs., Inc.*,
    2013 WL 1832638 (N.D. Cal. May 1, 2013) ...............................................7

## SUPPLEMENTAL REQUEST FOR JUDICIAL NOTICE

**TO THE HONORABLE LAWRENCE J. O'NEILL, UNITED STATES DISTRICT JUDGE, AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

Pursuant to Fed. R. Evid. 201(b) and (d), Defendant Halliburton Energy Services, Inc.'s ("HESI") hereby requests that the Court take judicial notice of the following documents in further support of its Protective Motion to Stay Action Pending U.S. Supreme Court Decision Or, Alternatively, Pending Appellate Review Of Any Denial Of Defendant's Pending Motion To Compel Individual Arbitration (Dkt. #29):

Exhibit D:     The Brief for the United States as Amicus Curiae filed in *Ernst & Young v. Morris*, U.S. Sup. Ct. Case No. 16-300, on June 16, 2017.

Exhibit E:     The current docket report for *Ernst & Young v. Morris*, U.S. Sup. Ct. Case No. 16-300, available at the URL https://www.supremecourt.gov/search.aspx?filename=/docketfiles/16-300.htm.

HESI's request is made pursuant to Fed. R. Evid. Rule 201(b) and (d) on the grounds that the foregoing documents are proper subjects for judicial notice because they are records of the United States Supreme Court and/or their contents are not subject to reasonable dispute and they are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

DATED: July 5, 2017                    **MᴄGᴜɪʀᴇWᴏᴏᴅs LLP**

By: _____/s/ Matthew C. Kane_____
                                       Matthew C. Kane, Esq.
                                       Sabrina A. Beldner, Esq.
                                       Sylvia J. Kim, Esq.
                                       Amy E. Beverlin, Esq.

                                       Attorneys for Defendant
                                       HALLIBURTON ENERGY SERVICES, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff has not made any showing of cognizable harm that would result to him or the putative class members from granting Defendant Halliburton Energy Services, Inc.'s ("HESI") *protective* Motion, *only if* the Court otherwise is inclined to *deny* HESI's pending Motion to Compel Individual Arbitration ("MTCA") based on the Ninth Circuit's rationale in its *Morris* decision, and briefly staying this action pending the Supreme Court's decision in *Morris*. Rather, he merely asserts that a stay would delay his recovery of monetary damages (assuming he prevails in this action) and increase the risk that evidence will become more difficult to collect as memories fade over time. But this purported "harm" is present any time that a stay is granted, and courts have regularly refused to deny stays on those grounds. Furthermore, Plaintiff mischaracterizes HESI's protective request as one for an "indefinite" stay, but it actually would be relatively short since briefing has already commenced in *Morris* and will be completed shortly, and the case will be decided during the Supreme Court's upcoming term.

Next, the harm and inequity to the parties and the Court in having to incur the time and expense of proceeding with class action litigation and discovery if it turns out there is an enforceable arbitration agreement that requires Plaintiff to arbitrate his claims only on an individual basis immeasurably outweighs any harm resulting from a stay. Indeed, Plaintiff *does not dispute* that there is a fair probability that the Supreme Court will reverse the Ninth Circuit's *Morris* decision. Because arbitration is unique, the time and expense associated with potentially having to litigate claims on a class-wide basis that are subject to mandatory individual arbitration are substantial. Thus, HESI will suffer substantial irreparable harm if the benefits of arbitration are lost by having to litigate the adjudication of the claims in court on a class-wide basis, particularly given that the Supreme Court's impending *Morris* decision may ultimately put to an end any question that Plaintiff's claims must be compelled to individual arbitration. Accordingly, if the Court is inclined to deny HESI's pending MTCA based on the *Morris* decision, then HESI protectively requests that it instead stay all proceedings in this action (including, without limitation, any final ruling on the MTCA) pending the Supreme Court's decision in *Morris*.

Alternatively, and *only if* the Court *denies* the MTCA outright, HESI protectively requests that it exercise its inherent discretion and stay this case pending HESI's intended seeking and exhaustion of interlocutory appellate review of that order.

## II.    IF THE COURT IS INCLINED TO DENY THE MTCA BASED ON *MORRIS*, THEN THIS ACTION SHOULD BE STAYED PENDING THE SUPREME COURT'S FORTHCOMING DECISION

### A.    THE COURT'S INHERENT AUTHORITY TO STAY THIS ACTION IS BROAD

Plaintiff acknowledges and concedes that the Court has the inherent authority to stay proceedings before it. In opposing this Motion, Plaintiff selectively quotes from *Yong v. I.N.S.*, 208 F.3d 1116, 1119, n. 2 (9th Cir. 2000), for the premise that a stay is improper because district courts are bound to follow a decision of the Circuit Court of Appeals and "have no authority to await a ruling by the Supreme Court before applying the circuit court's decision as binding authority." *See* Dkt. #40 (Oppos.) at 5:24-6:1. Plaintiff's reliance on *Yong* is misplaced. *Yong* involved habeas proceedings, which "implicate special considerations that place unique limits on a district court's authority to stay a case in the interests of judicial economy." *Id.* at 1120. *Yong* was limited to the unique circumstances and considerations it involved, including that "the [habeas] statute itself directs courts to give petitions for habeas corpus 'special, preferential consideration to insure expeditious hearing and determination.'" *Id.*

Furthermore, the relevant question here is not whether the Court should ignore binding Circuit precedent, but rather, whether the Court should exercise its discretion to stay this case because doing so would benefit the parties and the Court and further judicial economy and efficiency. As noted, the Supreme Court's decision in *Morris* is forthcoming and may result in reversal of the Ninth Circuit's decision. Indeed, Plaintiff does ***not*** dispute that **there is a fair probability that the Supreme Court will reverse the Ninth Circuit's *Morris* decision**. Notably, just last month and shortly after this Motion was filed, the United States Department of Justice ("DOJ") filed an amicus brief in *Morris* in which it changed its earlier position and argues that the Supreme Court should find that class and collective action waivers in employment arbitration agreements are legal and enforceable and do not run afoul of the National Labor Relations Act. *See* Supplemental Request for Judicial Notice ("Supp. RJN"), Exh. D (DOJ

Amicus Brief).[1]  In short, the United States is advocating for and supports the reversal of *Morris*.

As set forth in HESI's opening brief, several courts in the Ninth Circuit have already issued stays pending the Supreme Court's forthcoming decision in *Morris*.  *See* Motion at 5:6-15 & n. 2; *see also In RE: Sprouts Farmers Market, Inc. Employee Data Security Breach Litig.*, 2017 U.S. Dist. LEXIS 80323 (D. Ariz. May 24, 2017) (granting stay pending Supreme Court's decision in *Morris*); *Doe 1 v. Swift Transp., Inc.*, 2017 WL 758279, *4 (D. Ariz. Feb. 24, 2017) (same).  While Plaintiff cites to three district court decisions that declined to issue stays – *Daugherty v. Solarcity Corp.*, 2017 WL 386253 (N.D. Cal. Jan. 26, 2017), *Rivera v. Saul Chevrolet, Inc.*, 2017 WL 1862509 (N.D. Cal. May 9, 2017), and *Coppernoll v. Hamcor., Inc.*, 2017 WL 446315 (N.D. Cal. Jan. 17, 2017) – those cases are patently distinguishable.

First, the only basis cited for the courts' orders denying stays in *Daugherty* and *Coppernoll* was the uncertainty as to when a decision in *Morris* would issue.  *Daugherty*, 2017 WL 386253 at *4; *Coppernoll*, 2017 WL 446315 at *2.  But *Daugherty* and *Coppernoll* were decided *almost six months ago*, in January 2017.  Not only are we now six months closer to a decision in *Morris* than the parties were when those courts were evaluating the stay requests, but the briefing in *Morris* is now already under way and will be completed in a few short weeks.  *See* Supp. RJN, Exh. E (Updated *Morris* Docket).  Therefore, a stay at this point would be relatively brief.  Furthermore, although the courts in *Daugherty* and *Coppernoll* declined to stay the entire proceedings, they simultaneously recognized that proceeding with class-related discovery while the Ninth Circuit's *Morris* decision was pending Supreme Court review would be inappropriate, and ordered that any discovery should be limited to the facts and circumstances applicable to the plaintiff's *individual* claims and "not veer off into discovery pertaining chiefly to *class* issues."  *Daugherty*, 2017 WL 386253 at *4; *Coppernoll*, 2017 WL 446315 at *2.

*Rivera* is also unavailing to Plaintiff inasmuch as the defendants in that case only made a "passing" request for a stay for the first time in their *reply brief*, and, unlike here, made <u>no</u>

---

[1] Plaintiff's argument also ignores that the Supreme Court previously reversed the Ninth Circuit's decision invalidating class action waivers in arbitration agreements in *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333 (2010).

showing of a clear case of hardship or inequity to justify the stay. *Rivera*, 2017 WL 1862509 at *5 (rejecting the request to stay pending *Morris* on the grounds that it "need not consider arguments raised for the first time in a reply brief.") (citation and internal quotation marks omitted).

Plaintiff also selectively quotes a passage from *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007), to argue that "it might be abuse of discretion to grant a stay 'if there is even a fair possibility that the stay … will work damage to someone else[.]'" *See* Dkt. #40 (Oppos.) at 6:22-25. But when read in its entirety, that decision actually held that such abuse occurs *only if* there is *no* "showing by the moving party of 'hardship or inequity.'" 498 F.3d at 1066 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). Here, HESI has adequately demonstrated that it will be irreparably harmed absent a stay.

Accordingly, to the extent the Court is inclined to deny the MTCA based on the Ninth Circuit's decision in *Morris*, it should exercise its discretion and, in the interests of economy and efficiency, stay this action in its entirety pending the Supreme Court's decision in *Morris.*

### B. THE EFFICIENCY AND ECONOMY THAT WILL BE SERVED BY GRANTING A STAY FAR OUTWEIGH ANY POTENTIAL HARM THAT MAY RESULT TO PLAINTIFF

Plaintiff, who did not even file this action until *18 months after his termination*, disingenuously argues that a stay will "prejudice Plaintiff and the putative class by substantially delaying the proceedings in this action." *See* Dkt. #40 (Oppos.) at 7:4-6. To that end, Plaintiff contends that a stay will "materially harm Plaintiff and the members of the putative class by delaying monetary recovery and extending the amount of time which they have not been paid wages owed to them," and "impeding Plaintiff's efforts to gather evidence to prove his claims by increasing the chance of the loss of evidence, witnesses, and witness memories, [and] allowing putative class members to inadvertently destroy evidence due to ignorance of the existence of this litigation." *See* Dkt. #40 (Oppos.) at 7:18-23. But none of the foregoing constitute cognizable harm or ongoing injury that would justify denying a stay, particularly where, as here, a stay would otherwise further efficiency and serve the economic interests of the parties and the Court.

First, "[d]elay is a feature common to all stayed cases, and mere delay in the litigation does not establish undue prejudice." *Aten Int'l Co., Ltd v. Emine Tech. Co.*, 2010 WL 1462110, *7

(C.D. Cal. Apr. 12, 2010) (citing *Research in Motion, Ltd. v. Visto Corp.*, 545 F.Supp.2d 1011, 1012 (N.D. Cal.2008)); *Sorensen v. The Black & Decker Corp.*, 2007 WL 2696590, *4 (S.D. Cal. Sept. 10, 2007) ("Protracted delay is always a risk inherent in granting a stay … The general prejudice of having to wait for resolution is not a persuasive reason to deny the motion.").

Second, given that Plaintiff's employment with HESI ended over two years ago, he lacks standing to seek injunctive relief, and consequently, the only relief he seeks in this action are for monetary damages. But "[a] delay in recovering potential monetary damages is not sufficient prejudice to warrant denial of a stay." *In re Am. Apparel, Inc. S'holder Derivative Litig.*, 2012 WL 9506072, *43 (C.D. Cal. July 31, 2012) (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268-69 (9th Cir. 1962), and noting that because a delay in trial would only delay the recovery of monetary damages, the plaintiff had "not made a strong showing in support of its assertion that it will suffer irreparable damages and a miscarriage of justice").[2]  Plaintiff's reliance on *Cashon v. Kindred Healthcare Operating, Inc.*, 2016 WL 6611031 (N.D. Cal. Nov. 9, 2016), to argue that a stay is unwarranted is misplaced and unavailing.  When *Cashon* was decided, the Supreme Court had not yet even granted certiorari in *Morris*.  *See* Supp. RJN, Exh. E.  Consequently, the *Cashon* court's decision to not stay the case was driven by the defendant's failure to make any "showing that the Supreme Court is likely to grant certiorari in *Morris*," in addition to the defendant's failure to proffer *any* reason why the public interest weighed in favor of a stay.  *Id.* at *2-3 (noting that the Supreme Court "receives approximately 7,000-8,000 petitions for writ of certiorari each term, but grants and hears oral argument in only about 80 cases" and that the defendants "provide no reason why the public interest weighs in favor of a stay").  Since *Cashon*, not only has the Supreme Court granted certiorari in *Morris*, but the petitioner's opening brief has already been filed, respondent's response brief is due in a matter of weeks and the case is set for oral argument and a decision in

---

[2] *See also Delphi Connection Sys., LLC v. Koehlke Components, Inc.*, 2012 WL 12895680, *2 (C.D. Cal. Oct. 17, 2012) ("Delphi primarily seeks monetary damages, which are not likely to be adversely affected by a stay."); *Liberty Surplus Ins. Corp. v. IMR Contractors Corp.*, 2009 WL 1010842, *4 (N.D. Cal. Apr. 14, 2009) (finding that "a delay in recovering potential monetary damages" did not warrant denial of a stay); *Smith v. Legal Helpers Debt Resolution, LLC*, 2012 WL 12863172, *2 (W.D. Wash. Apr. 24, 2012) (concluding that the harm to the plaintiff and the putative class members was not irreparable where they primarily sought monetary damages).

the upcoming term. Furthermore, unlike in *Cashon*, HESI has demonstrated that the public interest would be furthered by a stay and Plaintiff has ***not*** attempted to controvert that showing.

Third, the risks of fading memories and stale evidence are inherent any time a stay is granted, much the same way that a delay is inherent in any stay. If those considerations alone were sufficient to deny a stay, there would be no circumstance in which a stay would ever be justified. Not surprisingly, Plaintiff has not identified a single case where a court has declined to issue a stay based on the speculative risk of potential lost evidence and fading memories. Further, Plaintiff's argument is undercut by his assertion that the "challenged policies and practices are permitted to continue." *See* Dkt. #40 (Oppos.) at 8:5. If the supposed unlawful conduct is still ongoing, then Plaintiff's argument that relevant evidence will become increasingly unavailable with the passage of time is inherently mitigated, since the allegedly unlawful conduct which forms the basis for Plaintiff's lawsuit is supposedly continuing. *See, e.g.*, *Minor v. FedEx*, 2009 WL 1955816, *1 (N.D. Cal. July 6, 2009) (construing plaintiff's argument that "the facts are the facts" and that they are unlikely to change as an "indication that the stay will not cause damage").

Accordingly, Plaintiff has failed to establish that he or the putative class members will be harmed by a stay, and even so, HESI has demonstrated that the balance of potential harms overwhelmingly weighs in favor of granting a stay.

**C. HESI WILL SUFFER SUBSTANTIAL HARDSHIP IF IT MUST PROCEED WITH LITIGATING CLASS ACTION CLAIMS THAT ARE ULTIMATELY SUBJECT TO AN ENFORCEABLE ARBITRATION AGREEMENT THAT REQUIRES THOSE CLAIMS TO BE ARBITRATED ON AN INDIVIDUAL BASIS**

Without a stay, HESI will suffer substantial hardship in having to defend against Plaintiff's claims, in court and potentially on a class-wide basis, when such claims may ultimately be subject to mandatory individual arbitration. Where, as here, the party opposing a stay has not presented evidence that it will be harmed by a stay, "courts have considered the moving party's burden in litigating the case to be a legitimate form of hardship." *In re Am. Apparel, Inc. S'holder Derivative Litig.*, 2012 WL 9506072 at *45.[3] As set forth above, Plaintiff has not made a viable

---

[3] *See also Lamar Co., LLC v. Continental Cas. Co.*, 2007 WL 81876, *3 (E.D. Wa. Jan.8,

91453176.4

showing of harm that would result from a brief stay of this case. Therefore, HESI's burden in having to litigate this case is in and of itself a substantial hardship.

In addition, the important, cost-limiting purpose of arbitration agreements would be defeated if HESI were required to expend significant time and expense litigating Plaintiff's claims and potentially on a class-wide basis in this forum. "[A]rbitration is unique" with respect to the irreparability of litigation costs because "[i]f a party must undergo the expense of trial" where an enforceable arbitration agreement exists, "the anticipated advantages of arbitration—speed and economy—are lost." *Zaborowski v. MHN Gov't Servs., Inc.*, 2013 WL 1832638, *2 (N.D. Cal. May 1, 2013); *see also C.B.S. Employees Fed. Credit Union v. Donaldson,* 716 F.Supp. 307, 310 (W.D.Tenn.1989) (While "monetary expenses incurred in litigation are normally not considered irreparable," arbitration presents a "unique situation"). If HESI is forced to proceed with class-wide litigation in this forum, and the Supreme Court subsequently reverses *Morris*, the primary benefits of arbitration would be lost, and HESI will be irreparably deprived of its contractual rights to individual arbitration. *Alvarez v. T-Mobile USA, Inc.*, 2010 WL 5092971, *2 (E.D. Cal. Dec. 7, 2010) ("Defendant will suffer substantial hardship if this action is permitted to go forward, since the point of an arbitration clause is to free contracting parties from the burden of litigation.").

Furthermore, "in potential class actions, courts have found lost time and money to constitute irreparable harm…." *Doe 1 v. Swift Transportation Co.*, 2017 WL 758279, *3 (D. Ariz. Feb. 24, 2017).[4] If this case is not stayed, discovery will be inefficient for both sides and will unnecessarily drive up the cost of litigation because the parties could be conducting and

_____

2007) (because the court was not persuaded that there was a "fair possibility" the non-moving party would be harmed, "it [was] not necessary for Lamar or Continental to demonstrate a 'clear case of hardship or inequity'").

[4] *See also Steiner v. Apple Computer, Inc.*, 2008 WL 1925197, *5 (N.D. Cal. Apr. 29, 2008) (finding that irreparable harm "strongly" favored a stay pending appeal of order denying arbitration where continued litigation would result in defendants facing not just "standard costs and burden associated with consumer litigation" but also the expensive and burdensome costs associated with class notification and certification procedures); *Smith v. Legal Helpers Debt Resolution, LLC*, 2012 WL 12863172, *2 (W.D. Wash. Apr. 24, 2012) (holding that the cost of litigation is a substantial burden "where Defendants are facing the expense of a possible class action"); *Kaltwasser v. Cingular Wireless LLC*, 2010 WL 2557379, at *2 (N.D. Cal. June 21, 2010) ("[T]he nature and extent of discovery permissible in private arbitration is fundamentally different from that allowed in class-action litigation").

responding to class-related discovery that actually is unnecessary if the Supreme Court reverses *Morris*.[5]  For example, in *Alvarez*, 2010 WL 5092971 at *2, the court stayed putative class action litigation pending the Supreme Court's review of the Ninth Circuit's underlying decision in *Concepcion,* reasoning that the significant costs relating to fact and expert discovery, motion practice and trial preparation to defend a class action lawsuit "may be unnecessary if the Supreme Court finds that the Federal Arbitration Act preempts state law from conditioning enforcement of an arbitration clause on the availability of class action, which might require this action to be arbitrated."  Similarly, in *Gong-Chun v. AETNA, Inc.*, 2010 WL 1980175, *4 (E.D. Cal. May 17, 2010) (Oberto, J.), the court held that a "clear case of hardship" was made out where, without a stay, the parties could be conducting "inefficient or pointless discovery."  Likewise, here, HESI has made a "clear case of hardship" if a stay is not granted because the parties will needlessly incur significant expense associated with class action discovery and motion practice with respect to claims that are subject to individual arbitration, and/or which Plaintiff has no right to pursue if the arbitration agreement between the parties is enforceable.  *Alvarez*, 2010 WL 5092971 at *2 (finding it would be "unjust for defendant to have to litigate this case and incur related expenses if the parties agreed to an enforceable arbitration agreement").

Plaintiff's reliance on *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005), in arguing that the burden of defending a lawsuit does not constitute sufficient hardship, is misplaced because *Lockyer* does not support that proposition.  In fact, the *Lockyer* court did not even consider whether defending a lawsuit amounts to a substantial hardship that justifies denying a stay.  Notwithstanding, *Lockyer* does not inform the Court's decision in this case because it is distinguishable on at least two additional grounds.  First, it involved claims for prospective injunctive relief to protect an important government interest in the face of *ongoing and future harm*, as distinguished from the claims in this case which are for monetary damages for past alleged wage and hour violations which do not constitute sufficient prejudice to warrant denial of

---

[5] *See, e.g.*, *Minor*, 2009 WL 1955816 at *1 (granting stay on grounds that, *inter alia*, the California Supreme Court's decision in *Brinker* will "significantly determine the course of this litigation," including the scope of discovery that the parties will seek); *Gabriella v. Wells Fargo Fin., Inc.*, 2009 WL 188856, *1 (N.D. Cal. Jan. 26, 2009) (same).

a stay. *Id.* ("Unlike the plaintiffs in *CMAX* and *Leyva*, who sought only damages for past harm, the Attorney General seeks injunctive relief against ongoing and future harm.").

Second, the court in *Lockyer* specifically limited its holding to the specific factual and legal circumstances at issue in that case which are not present here, namely, "where the power of the district court to decide whether the automatic stay applies is clear, where the inapplicability of the automatic stay is also clear, and where the proceeding in the bankruptcy court is unlikely to decide, or to contribute to the decision of, the factual and legal issues before the district court." *Id.* at 1113 ("We hold *only* that a *Landis* stay is improper *in the circumstances of this case....*") (emph. added). Indeed, the applicability of *Lockyer* is limited to cases where the claim falls "within the 'police or regulatory power' exception to the automatic stay" that applies when a *bankruptcy* case is pending. *Id.* at 1112. To that end, the *Lockyer* court expressly "recognize[d] the importance of the district court having the ability to control its own docket, particularly in this time of scarce judicial resources and crowded dockets," and admonished that its holding was not intended to "be read to restrict unduly the ability of the district court, in appropriate cases, to issue … stays...." *Id.* at 1112-13.

### D. THE REQUESTED STAY IS RELATIVELY BRIEF AND CERTAINLY NOT INDEFINITE

Although an exact date for oral argument in *Morris* have not yet been scheduled, a stay in this case will be relatively brief. *Morris* is set for oral argument during the upcoming October term, briefing will be completed shortly, and it is likely that a decision will issue in less than a year given that "the Supreme Court customarily issues its decisions by the end of June." *Amini v. AUS Mktg. Research Sys., Inc.*, 2016 WL 7647690, *2 (C.D. Cal. Feb. 26, 2016); *Minor*, 2009 WL 1955816 at *1 (characterizing estimated stay of "less than a year" as being "brief"). Therefore, contrary to Plaintiff's argument, the requested stay is *not* "indefinite," and should be granted.[6]

---

[6] *See, e.g., Gong-Chun*, 2010 WL 1980175 at *3 (finding that a stay pending the California Supreme Court's decision in *Brinker Restaurant Corp v. Sup. Ct.* "would not be tantamount to an 'indefinite stay'" even though the California Supreme Court had not yet scheduled oral argument).

# III. ALTERNATIVELY, IF THE COURT DENIES HESI'S MTCA, THIS ACTION SHOULD BE STAYED PENDING HESI'S SEEKING AND EXHAUSTION OF APPELLATE REVIEW OF THAT DECISION

Plaintiff does *not* dispute that, if the Court denies HESI's MTCA, this action should be stayed pending HESI's intended seeking and exhaustion of appellate review of that decision. Instead, Plaintiff's only objection is that HESI's stay request is "premature" because no such appellate review has been sought yet. Plaintiff's argument is illogical and nonsensical because HESI's protective, alternative stay request is expressly contingent on the prospective scenario of the Court entering an immediately appealable order denying its MTCA. *See* Motion at 15:5 (alternatively requesting a stay pending appellate review "only if the Court denies the MTCA"). Obviously, the Court would not decide whether to grant such a stay until it has ruled on HESI's pending and fully-briefed MTCA. If the Court grants the MTCA, then it can simply deny this Motion as moot. But if the Court denies the MTCA, then that will be an immediately appealable order under the FAA. Accordingly, under that prospective scenario, and particularly given HESI's expressed intent to appeal such an order, the Court can and should stay this action pending HESI's timely seeking and exhausting appellate review of the order. Should HESI fail to file such an appeal by its deadline to do so, then the stay would simply expire.

# IV. CONCLUSION

For all of the foregoing reasons, HESI protectively requests that, if the Court is inclined to deny the MTCA based on the Ninth Circuit's holding in *Morris*, all proceedings in this action, including the final disposition of HESI's MTCA, should be stayed pending the Supreme Court's forthcoming decision in *Morris*. Alternatively, and only if the MTCA is denied, HESI protectively requests that this action be stayed pending HESI's intended seeking and exhaustion of appellate review of that Order, which will be immediately appealable under the FAA.

DATED: July 5, 2017

**McGuireWoods LLP**

By: _____/s/ Matthew C. Kane_____
Matthew C. Kane, Esq.
Sabrina A. Beldner, Esq.
Sylvia J. Kim, Esq.
Amy E. Beverlin, Esq.
Attorneys for Defendant
HALLIBURTON ENERGY SERVICES, INC.

91453176.4

10

DEFENDANT'S REPLY IN SUPPORT OF *PROTECTIVE* MOTION TO STAY ACTION PENDING U.S. SUPREME COURT DECISION OR, ALTERNATIVELY, PENDING APPELLATE REVIEW OF ANY DENIAL OF DEFENDANT'S PENDING MOTION TO COMPEL INDIVIDUAL ARBITRATION (DKT. #29)

Supreme Court, U.S.
FILED

JUN 16 2017

OFFICE OF THE CLERK

Nos. 16-285, 16-300, and 16-307

# In the Supreme Court of the United States

EPIC SYSTEMS CORPORATION, PETITIONER

*v.*

JACOB LEWIS

ERNST & YOUNG LLP, ET AL., PETITIONERS

*v.*

STEPHEN MORRIS, ET AL.

NATIONAL LABOR RELATIONS BOARD, PETITIONER

*v.*

MURPHY OIL USA, INC., ET AL.

*ON WRITS OF CERTIORARI
TO THE UNITED STATES COURTS OF APPEALS
FOR THE FIFTH, SEVENTH, AND NINTH CIRCUITS*

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
SUPPORTING PETITIONERS IN NOS. 16-285 AND 16-300
AND SUPPORTING RESPONDENTS IN NO. 16-307**

JEFFREY B. WALL
  *Acting Solicitor General
  Counsel of Record*
MALCOLM L. STEWART
  *Deputy Solicitor General*
ALLON KEDEM
  *Assistant to the Solicitor
  General*

*Department of Justice
Washington, D.C. 20530-0001
SupremeCtBriefs@usdoj.gov
(202) 514-2217*

## QUESTION PRESENTED

Whether arbitration agreements that bar individual employees from pursuing work-related claims on a collective or class basis limit the employees' right under the National Labor Relations Act to engage in "concerted activities" in pursuit of their "mutual aid or protection," 29 U.S.C. 157, and whether such agreements are enforceable under the Federal Arbitration Act, 9 U.S.C. 2.

Exhibit D

## TABLE OF CONTENTS

Page

Interest of the United States ................................................. 2
Statutory provisions involved ............................................... 2
Statement .......................................................................... 2
Summary of argument ........................................................ 9
Argument:
    When parties agree to arbitrate employment-related
    claims bilaterally, the FAA requires enforcement of
    those agreements ........................................................ 12
    A. The NLRA does not preclude enforcement
       of an agreement to arbitrate employees'
       work-related claims bilaterally .............................. 14
       1. Bilateral arbitration agreements should
          be enforced absent a specific congressional
          command to the contrary ................................. 15
       2. The NLRA does not contain a specific
          congressional command precluding
          enforcement of plaintiffs' bilateral
          arbitration agreements ................................... 18
     B. Enforcing the parties' arbitration agreements
       in these cases, in accordance with the FAA,
       would not deprive plaintiffs of any substantive
       right conferred by another federal statute ............ 25
     C. The FAA's saving clause provides no sound
       basis for declining to enforce the parties'
       arbitration agreements .......................................... 29
Conclusion .......................................................................... 34
Appendix — Statutory provisions .......................................... 1a

Exhibit D

IV

# TABLE OF AUTHORITIES

Cases: Page

*AT&T Mobility LLC* v. *Concepcion*,
563 U.S. 333 (2011).............................12, 30, 31, 32, 33

*Allied-Bruce Terminix Cos.* v. *Dobson*,
513 U.S. 265 (1995)............................................... 31

*American Express Co.* v. *Italian Colors Rest.*,
133 S. Ct. 2304 (2013) ..................................13, 14, 25, 26, 30

*Buckeye Check Cashing, Inc.* v. *Cardegna*,
546 U.S. 440 (2006)................................................ 2

*CompuCredit Corp.* v. *Greenwood*,
565 U.S. 95 (2012) ......................................... *passim*

*D.R. Horton, Inc.*, 357 N.L.R.B. 2277 (2012)............... 3, 4, 8

*D.R. Horton, Inc.* v. *NLRB*, 737 F.3d 344
(5th Cir. 2013)..................................................... 4

*DIRECTV, Inc.* v. *Imburgia*, 136 S. Ct. 463 (2015) ............. 7

*Dean Witter Reynolds Inc.* v. *Byrd*,
470 U.S. 213 (1985)................................................ 2

*Doctor's Assocs., Inc.* v. *Casarotto*,
517 U.S. 681 (1996)............................................... 31

*Eastex, Inc.* v. *NLRB*, 437 U.S. 556 (1978) ....................... 24

*Gilmer* v. *Interstate/Johnson Lane Corp.*,
500 U.S. 20 (1991) .......................................9, 15, 16, 17, 31

*Green Tree Fin. Corp.-Ala.* v. *Randolph*,
531 U.S. 79 (2000) ........................................... 16, 31

*Hoffman Plastic Compounds, Inc.* v. *NLRB*,
535 U.S. 137 (2002)............................................... 24

*J.I. Case Co.* v. *NLRB*, 321 U.S. 332 (1944) ............ 11, 27, 28

*Kindred Nursing Ctrs. Ltd. P'ship*, No. 16-32
(May 15, 2017) ............................................... 31, 32

*Litton Fin. Printing Div.* v. *NLRB*,
501 U.S. 190 (1991) .............................................. 30

V

Cases—Continued:                                                    Page

Mitsubishi Motors Corp. v. Soler Chrysler-
    Plymouth, Inc., 473 U.S. 614 (1985) .............. 16, 17, 25, 31
Moses H. Cone Mem'l Hosp. v. Mercury Constr.
    Corp., 460 U.S. 1 (1983) ....................................................... 12
NLRB v. Alternative Entm't, Inc., No. 16-1385,
    2017 WL 2297620 (6th Cir. May 26, 2017)...... 19, 21, 23, 24
National Licorice Co. v. NLRB,
    309 U.S. 350 (1940)............................................ 11, 27, 28, 29
Preston v. Ferrer, 552 U.S. 346 (2008) ................................. 31
Rodriguez de Quijas v. Shearson/Am. Express, Inc.,
    490 U.S. 477 (1989)............................................ 16, 17, 18, 31
Scherk v. Alberto-Culver Co., 417 U.S. 506 (1974) ....... 15, 16
Shady Grove Orthopedic Assocs., P.A. v. Allstate
    Ins. Co., 559 U.S. 393 (2010) ............................................. 26
Shearson/Am. Express Inc. v. McMahon,
    482 U.S. 220 (1987)................................................... passim
Southland Corp. v. Keating, 465 U.S. 1 (1984)................... 31
Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,
    559 U.S. 662 (2010)............................................ 11, 12, 30
Wilko v. Swan, 346 U.S. 427 (1953) ..................................... 15

Statutes and rules:

Credit Repair Organizations Act, 15 U.S.C. 1679 et seq. ........17
        15 U.S.C. 1679c(a) ........................................................... 17
        15 U.S.C. 1679f(a)...................................................... 17, 18
        15 U.S.C. 1679g................................................................ 17
Fair Labor Standards Act of 1938, 29 U.S.C. 201 et seq. ..........5
Federal Arbitration Act, 9 U.S.C. 1 et seq. .......................... 2
        9 U.S.C. 2.............................................................passim, 1a
        9 U.S.C. 3........................................................................... 3

VI

Statutes and rules—Continued:                                    Page

National Labor Relations Act, 29 U.S.C. 151 *et seq.*............ 3

    29 U.S.C. 151 .................................................................. 3

    29 U.S.C. 157 ................................................*passim*, 1a

    29 U.S.C. 158 ................................................ 4, 23, 2a

    29 U.S.C. 158(a)(1) ................................ 3, 21, 22, 2a

    29 U.S.C. 160(a) ........................................................ 3

    29 U.S.C. 206 ......................................................... 26

    29 U.S.C. 207 ......................................................... 26

    29 U.S.C. 216(b) ............................................ 18, 20, 26

Securities Act of 1933, 15 U.S.C. 77a *et seq.*:

    15 U.S.C. 77n ........................................................ 15

    15 U.S.C. 77v(a) (1952) ........................................ 15

Securities Exchange Act of 1934, 15 U.S.C. 78a *et seq.*:

    15 U.S.C. 78aa (1970) ........................................ 16

    15 U.S.C. 78*o*(*o*) ................................................ 20

7 U.S.C. 26(n)(2) ...................................................... 19

10 U.S.C. 987(e)(3) ................................................... 19

12 U.S.C. 5518(b) ..................................................... 19

12 U.S.C. 5567(d)(2) ................................................. 19

15 U.S.C. 1226(a)(2) ................................................. 19

15 U.S.C. 1639c(e)(1) ............................................... 19

18 U.S.C. 1514A(e)(2) ............................................... 19

22 U.S.C. 290k-11(a) ................................................ 19

22 U.S.C. 1650a(a) .................................................. 19

Fed. R. Civ. P.:

    Rule 23 ........................................................ 10, 21, 22

    Rule 23(a)(1) ....................................................... 21

    Rule 23(a)(2) ....................................................... 21



VII

Miscellaneous:                                                    Page
    H.R. Rep. No. 1147, 74th Cong., 1st Sess. (1935)................22
    S. Rep. No. 573, 74th Cong., 1st Sess. (1935)................22, 23

Exhibit D

# In the Supreme Court of the United States

---

No. 16-285

EPIC SYSTEMS CORPORATION, PETITIONER

*v.*

JACOB LEWIS

---

No. 16-300

ERNST & YOUNG LLP, ET AL., PETITIONERS

*v.*

STEPHEN MORRIS, ET AL.

---

No. 16-307

NATIONAL LABOR RELATIONS BOARD, PETITIONER

*v.*

MURPHY OIL USA, INC., ET AL.

---

*ON WRITS OF CERTIORARI
TO THE UNITED STATES COURTS OF APPEALS
FOR THE FIFTH, SEVENTH, AND NINTH CIRCUITS*

---

**BRIEF FOR THE UNITED STATES AS AMICUS CURIAE
SUPPORTING PETITIONERS IN NOS. 16-285 AND 16-300
AND SUPPORTING RESPONDENTS IN NO. 16-307**

---

(1)

2

## INTEREST OF THE UNITED STATES

These cases present the question whether arbitration agreements that bar individual employees from pursuing work-related claims on a collective or class basis impermissibly limit the employees' right under the National Labor Relations Act (NLRA) to engage in "concerted activities" in pursuit of their "mutual aid or protection," 29 U.S.C. 157, or whether such agreements instead are enforceable under the Federal Arbitration Act (FAA), 9 U.S.C. 2. The United States and the National Labor Relations Board (NLRB or Board) have responsibility for enforcing the NLRA, and the NLRB filed a petition for a writ of certiorari in No. 16-307.

## STATUTORY PROVISIONS INVOLVED

Pertinent statutory provisions are reproduced in the appendix to this brief. App., *infra*, 1a-13a.

## STATEMENT

1. In 1925, Congress enacted the Federal Arbitration Act, 9 U.S.C. 1 *et seq.*, to "overcome judicial resistance to arbitration." *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U.S. 440, 443 (2006). "The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered." *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U.S. 213, 221 (1985). The FAA provides that any "written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. 2. If a suit is brought concerning "any issue referable to arbitration under an agreement in writing for such arbitration,

3

the court in which such suit is pending" must, "on application of one of the parties," stay the proceedings and refer the matter to arbitration in accordance with the parties' agreement. 9 U.S.C. 3.

2. The National Labor Relations Act, 29 U.S.C. 151 *et seq.*, was enacted in 1935 to encourage collective bargaining and to "protect[ ] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing." 29 U.S.C. 151. The NLRA provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. 157. An employer that "interfere[s] with, restrain[s], or coerce[s] employees in the exercise of the rights guaranteed in section 157" has committed "an unfair labor practice." 29 U.S.C. 158(a)(1). The National Labor Relations Board "is empowered * * * to prevent any person from engaging in any unfair labor practice * * * affecting commerce." 29 U.S.C. 160(a).

In January 2012, the Board ruled that agreements between individual employees and their employers that require arbitration of work-related disputes on a bilateral (rather than collective or classwide) basis interfere with the employees' right under Section 157 to engage in concerted activities, in violation of Section 158(a)(1). *D.R. Horton, Inc.*, 357 N.L.R.B. 2277, 2278-2283. The Board determined that, "[j]ust as the substantive right to engage in concerted activity aimed at improving wages, hours or working conditions through litigation or arbitration lies at the core of the rights protected by Section [157], the prohibition of individual agreements

4

imposed on employees as a means of requiring that they waive their right to engage in protected, concerted activity lies at the core of the prohibitions contained in Section [158]." *Id.* at 2281.

The Board also expressed the view that its ruling did not conflict with the FAA. The Board stated that its rationale was not specific to arbitration, and that the contractual term at issue "would equally violate the NLRA if it said nothing about arbitration, but merely required employees, as a condition of employment, to agree to pursue any claims in court against the [employer] solely on an individual basis." *D.R. Horton*, 357 N.L.R.B. at 2285. The Board also noted that, under the FAA's saving clause, see 9 U.S.C. 2 (requiring enforcement of arbitration agreements "save upon such grounds as exist at law or in equity for the revocation of any contract"), arbitration agreements "remain subject to the same defenses against enforcement to which other contracts are subject." 357 N.L.R.B. at 2284.

On review, the Fifth Circuit rejected the Board's analysis. *D.R. Horton, Inc.* v. *NLRB*, 737 F.3d 344, 360-362 (2013). The court held that enforcement of the challenged arbitration agreement would not "deny a party any statutory right" because "use of class action procedures * * * is not a substantive right" under Section 157. *Id.* at 357.[1] Judge Graves dissented in relevant part, explaining that he agreed with the Board's reasoning. *Id.* at 364-365.

3. These consolidated cases involve agreements, signed by individual employees and their employers, in

_____

[1] The Fifth Circuit in *D.R. Horton* agreed with the Board that an arbitration agreement constitutes an unfair labor practice to the extent that it prohibits employees from filing unfair-labor-practice charges with the Board. 737 F.3d at 364.

5

which the parties have agreed to resolve work-related disputes through bilateral arbitration.

a. Epic Systems Corporation makes healthcare software. 16-285 (*Epic*) Pet. App. 1a. In April 2014, it sent an email to its employees requiring them, as a condition of employment, to agree to arbitrate all wage-and-hour claims. The agreement specified that the employees waived "the right to participate in or receive money or any other relief from any class, collective, or representative proceeding." *Id.* at 2a (emphasis omitted).

Jacob Lewis, an employee who had consented to the arbitration agreement, filed a federal-court suit against Epic Systems "individually and on behalf of all others similarly situated." *Epic* Pet. App. 2a, 24a. Lewis alleged that Epic Systems had violated the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. 201 *et seq.*, and state law by denying overtime pay to him and other employees. When Epic Systems moved to dismiss the suit and to compel bilateral arbitration, Lewis argued that the arbitration agreement was invalid and unenforceable under the NLRA. *Epic* Pet. App. 2a-3a. The district court agreed with Lewis and denied Epic Systems' motion. *Id.* at 24a-29a.

The Seventh Circuit affirmed. *Epic* Pet. App. 1a-23a. The court concluded that the "text, history, and purpose" of Section 157 show that it "should be read broadly to include resort to representative, joint, collective, or class legal remedies." *Id.* at 5a-6a. The court also stated that, even if Section 157 were ambiguous, the court would defer to the Board's determination that the NLRA "prohibit[s] employers from making agreements with individual employees barring access to class or collective remedies." *Id.* at 7a (citing *D.R. Horton*). The court rejected Epic Systems' contention that the FAA

6

required enforcement of the agreement. *Id.* at 12a-2[
The court concluded that, because Epic System
concerted-action waiver is prohibited by the NLR
and because illegality is a "ground[ ] * * * for the rev
cation of any contract" within the meaning of the FAA
saving clause, 9 U.S.C. 2, the waiver is unenforceab
under the FAA's own terms. *Epic* Pet. App. 12a-15a.

b. Ernst & Young LLP and its U.S.-based affiliat
(collectively, Ernst & Young) provide accounting se
vices. 16-300 (*E&Y*) Pet. App. 2a, 43a-44a. Ernst &
Young required its employees, as a condition of employ
ment, to sign a "concerted action waiver" in which the
agreed to arbitrate any legal claims against the com
pany and to do so "only as individuals and in separate
proceedings." *Id.* at 2a (internal quotation marks omit-
ted). Despite signing that agreement, two Ernst &
Young employees filed suit in federal court, on behalf of
themselves and others similarly situated, alleging that
the company had improperly denied them overtime
wages in violation of the FLSA and state law. *Ibid.* The
district court granted Ernst & Young's motion to com-
pel bilateral arbitration and dismissed the suit. *Id.* at
43a-67a.

The Ninth Circuit reversed. *E&Y* Pet. App. 1a-25a.
The court held that the NLRA gives employees a "right
to pursue work-related legal claims together," and that
Ernst & Young had violated that right by requiring its
employees to resolve their legal claims in separate arbi-
tration proceedings. *Id.* at 3a; see *id.* at 3a-11a. The
court held that the FAA "does not dictate a contrary
result" because that statute requires only that arbitra-
tion contracts be placed "'on equal footing with all other
contracts,'" and the collective-action waiver would con-
travene the NLRA even if it were not contained in an

7

arbitration agreement. *Id.* at 12a (quoting *DIRECTV, Inc.* v. *Imburgia*, 136 S. Ct. 463, 468 (2015)) (citation omitted); see *id.* at 12a-14a. The court also characterized the employees' right to seek redress collectively as a non-waivable "substantive federal right," thereby distinguishing it from other cases involving "procedural" rights that may be limited by agreement. *Id.* at 15a-16a; see *id.* at 14a-21a.

Judge Ikuta dissented. *E&Y* Pet. App. 25a-42a. She explained that, "[i]n determining whether the FAA's mandate requiring 'courts to enforce agreements to arbitrate according to their terms' has been overridden by a different federal statute, the Supreme Court requires a showing that such a federal statute includes an express 'contrary congressional command.'" *Id.* at 28a (quoting *CompuCredit Corp.* v. *Greenwood*, 565 U.S. 95, 98 (2012)). Because the NLRA does not expressly prohibit the type of arbitration agreement that is at issue here, Judge Ikuta would have enforced the agreement as written. *Id.* at 34a-38a.

c. Murphy Oil USA, Inc. operates more than 1000 gas stations in 21 States. 16-307 (*Murphy Oil*) Pet. App. 24a. Murphy Oil required each of its employees and job applicants to sign a "Binding Arbitration Agreement and Waiver of Jury Trial" in which the parties waived their "right to commence, be a party to, or act as a class member in, any class or collective action" in any judicial or arbitration proceeding "relating to employment issues." *Id.* at 24a-25a (brackets omitted). In June 2010, four employees sued Murphy Oil in federal court, alleging FLSA violations. Invoking the arbitration agreement, Murphy Oil successfully moved to dismiss the collective action and to compel arbitration. *Id.* at 26a-28a.

8

One of the employees then filed an unfair-labor-practice charge with the Board, and the Board's General Counsel issued an administrative complaint against Murphy Oil. *Murphy Oil* Pet. App. 27a. In October 2014, the Board sustained the charge, reaffirming its prior decision in *D.R. Horton* and finding that Murphy Oil had violated the employee's right under the NLRA "to engage in collective action." *Id.* at 40a (quoting *D.R. Horton*, 357 N.L.R.B at 2286); see *id.* at 17a-89a. The Board stated that the NLRA creates "a substantive right to engage in concerted activity," and that the challenged arbitration agreement therefore "amounts to a prospective waiver of a right guaranteed by the NLRA." *Id.* at 43a. The Board also determined that its ruling did not conflict with the FAA because "the mandatory arbitration agreement is invalid under Section 2 of the FAA, the statute's savings clause," and because 29 U.S.C. 157 "amounts to a 'contrary congressional command' overriding the FAA." *Murphy Oil* Pet. App. 44a-46a (footnote omitted) (quoting *CompuCredit*, 565 U.S. at 98). Two members of the Board dissented in relevant part. See *id.* at 89a-131a (Member Miscimarra); *id.* at 131a-208a (Member Johnson).

Murphy Oil filed a petition for review, which the Fifth Circuit granted in relevant part. *Murphy Oil* Pet. App. 1a-16a. The court adhered to its precedent in *D.R. Horton,* holding that an employer may lawfully require its employees to agree to pursue all employment-related claims through bilateral arbitration, rather than through class or collective actions. *Id.* at 2a, 7a-8a & n.3.

9

## SUMMARY OF ARGUMENT

Under the FAA, agreements to resolve disputes through arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. 2. Courts must enforce agreements to arbitrate federal claims unless the FAA's mandate has been overridden by a contrary congressional command or unless enforcing the parties' agreement would deprive the plaintiff of a substantive federal right. Neither of those justifications for non-enforcement is applicable here. The parties' agreements, including their prohibition on class-wide or collective proceedings, should therefore be enforced according to their terms.

A. The FAA's strong presumption in favor of enforcing arbitration agreements may yield where "Congress itself" has overridden that presumption in another statute. *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (citation omitted). In mandating enforcement of agreements to arbitrate a variety of federal statutory claims, the Court has made clear that statutory authorization to pursue class actions in court for violations of particular federal laws is insufficient to override the FAA's directive that agreements to arbitrate must be enforced.

Although the FLSA authorizes employees to pursue collective actions in court, that authorization is not meaningfully different from similar provisions of other laws that this Court has found insufficient to override the FAA's mandate to enforce arbitration agreements as written. Presumably for that reason, plaintiffs in these cases have not argued, and the courts of appeals that ruled in their favor did not suggest, that the FLSA—the statute under which plaintiffs' federal

10

claims arise—overrides the FAA's directive that their arbitration agreements should be enforced. Plaintiffs' argument thus depends on the proposition that the NLRA's recognition of a general right to engage in "concerted activities," 29 U.S.C. 157, confers greater rights to pursue FLSA claims collectively than does the FLSA itself.

In no other context, however, has Section 157 been construed to expand the availability of class or collective remedies beyond those that are authorized by the laws that directly address those issues. Section 157 would not, for example, allow employees who do not satisfy the numerosity and typicality requirements of Federal Rule of Civil Procedure 23 to pursue a class action against their employer. Similarly here, Section 157 does not supersede the balance struck in the FAA and FLSA, or expand the range of circumstances in which collective litigation can go forward.

Nothing in the NLRA's legislative history indicates that Congress intended to bar enforcement of arbitration agreements like those at issue here. The legislative record accompanying bills that became the NLRA mentioned arbitration only briefly, in stating that Congress had declined to impose mandatory arbitration or to make the Board an arbitration agency. And while the NLRB's reading of ambiguous NLRA language is entitled to judicial deference, the Board's analysis of the interplay between the NLRA and the FAA is not.

B. In mandating enforcement of pre-dispute agreements to arbitrate various federal statutory claims, this Court has often emphasized that an agreement to arbitrate does not entail any surrender of substantive statutory rights. Similarly here, the parties' arbitration

11

agreements do not purport to authorize employer conduct that would violate the FLSA's wage-and-hour provisions, and they do not prevent a successful plaintiff from recovering (through arbitration) the full relief that a court could award for an FLSA violation.

Nor does enforcement of the arbitration agreements deprive plaintiffs of any substantive right under the NLRA. Although Section 157 unquestionably confers important substantive rights to organize and to engage in collective bargaining, the arbitration agreements do not constrain plaintiffs' exercise of those rights. Even assuming that the right to utilize collective dispute-resolution mechanisms for FLSA claims is encompassed within Section 157's residual phrase ("other concerted activities"), there is no evident reason for viewing it as a substantive NLRA right, when it is clearly a procedural right under the FLSA itself.

This Court's decisions in *National Licorice Co.* v. *NLRB*, 309 U.S. 350 (1940), and *J.I. Case Co.* v. *NLRB*, 321 U.S. 332 (1944), do not support a different conclusion. In those cases, the Court invalidated agreements between employers and their employees to resolve work-related disputes on a bilateral basis. But it did so because the employers had used the agreements as a basis for refusing to engage in collective bargaining. The agreements at issue here do not have any analogous anti-union purpose.

C. The FAA's saving clause provides no sound basis for declining to enforce the parties' arbitration agreements. The FAA's strong policy in favor of enforcing arbitration agreements applies equally to the parties' right to "specify *with whom* they choose to arbitrate their disputes." *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010). The Seventh and

12

Ninth Circuits understood the NLRA to prohibit enforcement of agreements to arbitrate work-related disputes bilaterally. The courts found that to be the sort of arbitration-neutral rule that the saving clause preserves because the rule focuses on the requirement of *bilateral* arbitration, rather than on the agreement to arbitrate as such.

This Court's decisions make clear, however, that the saving clause does not preserve rules of contract enforceability that would impede the achievement of the FAA's objectives, even when those rules are capable of application to contracts other than arbitration agreements. The Court in *AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333 (2011), applied that principle to hold that a state-law rule against enforcement of class-action waivers contained in certain consumer contracts fell outside the saving clause. For substantially the same reasons, the saving clause does not encompass the analogous federal-law rule that the Seventh and Ninth Circuits derived from the FAA.

## ARGUMENT

### WHEN PARTIES AGREE TO ARBITRATE EMPLOYMENT-RELATED CLAIMS BILATERALLY, THE FAA REQUIRES ENFORCEMENT OF THOSE AGREEMENTS

The FAA establishes a "liberal federal policy favoring arbitration," *Moses H. Cone Mem'l Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), the "central" feature of which is a directive that "private agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen S.A.* v. *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) (citation omitted). When contracting parties have agreed to resolve federal claims through bilateral arbitration, that choice must be honored "unless the

13

FAA's mandate has been overridden by a contrary congressional command." *American Express Co.* v. *Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (*Italian Colors*) (citations and internal quotation marks omitted).

Under that approach, the agreements at issue here must be enforced. Although plaintiffs in these cases assert causes of action under the FLSA (as well as under state law), they do not contend that the FLSA itself precludes enforcement of their agreements to arbitrate those statutory claims. And neither the text nor the history of the NLRA suggests that it gives plaintiffs greater rights to pursue collective litigation than they can assert under other sources of law like the FLSA. Enforcement of plaintiffs' arbitration agreements would not deprive them of their substantive right under the FLSA to proper wage-and-hour compensation, or any procedural right under the NLRA to invoke whatever class or collective procedures are otherwise available to them.

In *Murphy Oil*, this Office previously filed a petition for a writ of certiorari on behalf of the NLRB, defending the Board's view that agreements of the sort at issue here are unenforceable. After the change in administration, the Office reconsidered the issue and has reached the opposite conclusion. Although the Board's interpretation of ambiguous NLRA language is ordinarily entitled to judicial deference, courts do not defer to the Board's conclusion as to the interplay between the NLRA and other federal statutes. We do not believe that the Board in its prior unfair-labor-practice proceedings, or the government's certiorari petition in *Murphy Oil*, gave adequate weight to the congressional policy favoring enforcement of arbitration agreements that is reflected in the FAA.

14

More specifically, the Board's view that the phrase "other concerted activities" in 29 U.S.C. 157 encompasses participation in collective or class litigation may reflect a permissible interpretation of that language, such that an employer might commit an unfair labor practice by discharging employees who initiated or joined such suits in accordance with other provisions of law. It does not follow, however, that Section 157 *expands* the range of circumstances in which such litigation can go forward, by allowing employees who validly waived their collective-litigation rights under the FLSA to escape the consequences of that choice. The Board's approach fails to respect the FAA's directive that arbitration agreements should be enforced unless they run afoul of arbitration-neutral rules of contract validity.

### A. The NLRA Does Not Preclude Enforcement Of An Agreement To Arbitrate Employees' Work-Related Claims Bilaterally

The FAA "reflects the overarching principle that arbitration is a matter of contract." *Italian Colors*, 133 S. Ct. at 2309. When parties agree in writing to resolve disputes through arbitration, the agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. 2. The FAA requires courts to "rigorously enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes, and the rules under which that arbitration will be conducted." *Italian Colors*, 133 S. Ct. at 2309 (brackets, citations, and internal quotation marks omitted). To be sure, "[l]ike any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command." *Shearson/Am. Express Inc.* v. *McMahon*, 482 U.S. 220,

15

226 (1987). But a party resisting enforcement of an ar-
bitration agreement bears the "burden" of showing
"that Congress intended to preclude" enforcement. *Id.*
at 227.

1. ***Bilateral arbitration agreements should be enforced
    absent a specific congressional command to the
    contrary***

a. Although the policy in favor of arbitration applies
to both federal- and state-law claims, see, *e.g.*, *Gilmer*
v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26
(1991), this Court was initially reluctant to enforce
agreements to arbitrate disputes that involved federal
statutory rights. In *Wilko* v. *Swan*, 346 U.S. 427 (1953),
the Court considered whether to enforce the parties'
agreement to arbitrate a claim under the Securities Act
of 1933. The Court observed that the Securities Act
contained provisions "conferring jurisdiction" on fed-
eral district courts, *id.* at 433 & n.16 (citing 15 U.S.C.
77v(a) (1952)), and declaring "'void'" any agreement
"'to waive compliance with any provision' of the Securi-
ties Act," *id.* at 430 (quoting 15 U.S.C. 77n). Based on
those provisions, and on its skepticism of arbitration
and arbitrators, see *id.* at 435-436, the Court deter-
mined that "the protective provisions of the Securities
Act require the exercise of judicial direction to fairly
assure their effectiveness," *id.* at 437. The Court thus
held that "the intention of Congress concerning the sale
of securities is better carried out by holding invalid such
an agreement for arbitration of issues arising under the
[Securities] Act." *Id.* at 438.

The *Wilko* Court's skepticism of arbitration, and its
approach to reconciling the FAA with other federal
statutes, were short-lived. In *Scherk* v. *Alberto-Culver
Co.*, 417 U.S. 506 (1974), the Court held that the FAA

16

required enforcement of an agreement to arbitrate a dispute under the Securities Exchange Act of 1934, despite a statutory provision giving federal district courts "exclusive jurisdiction" over such suits. *Id.* at 514 (quoting 15 U.S.C. 78aa (1970)); see *id.* at 513-521. In *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), the Court explicitly acknowledged that the balance it had previously struck in reconciling the FAA with other federal statutes had been colored by an inappropriate hostility toward arbitration. *Id.* at 626-628. And in *Rodriguez de Quijas* v. *Shearson/Am. Express, Inc.*, 490 U.S. 477 (1989), the Court overruled *Wilko*, a step the Court described as necessary "to correct a seriously erroneous interpretation of statutory language that would undermine congressional policy." *Id.* at 484.

b. In more recent decisions addressing the enforceability of agreements to arbitrate federal statutory claims, the Court has asked whether "Congress itself," in enacting the statute that created the plaintiff's cause of action, "evinced an intention to preclude" enforcement of the parties' agreement. *Gilmer*, 500 U.S. at 26 (citation omitted). "If such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an 'inherent conflict' between arbitration and the [statute's] underlying purposes." *Ibid.* (quoting *McMahon*, 482 U.S. at 227). The Court has further explained that "the burden" rests with the party resisting enforcement of the arbitration agreement "to show that Congress intended" that result. *Ibid.* In each of those cases, after examining relevant text, history, and purpose, the Court concluded that Congress did not speak with the necessary specificity. See, *e.g.*, *Green Tree Fin. Corp.-Ala.* v. *Randolph*, 531 U.S. 79, 89-92

17

(2000) (Truth in Lending Act); *Gilmer*, 500 U.S. at 26-33 (Age Discrimination in Employment Act of 1967); *Rodriguez de Quijas*, 490 U.S. at 479-484 (Securities Act of 1933); *McMahon*, 482 U.S. at 227-242 (Securities Exchange Act of 1934 and Racketeer Influenced and Corrupt Organizations Act); *Mitsubishi Motors*, 473 U.S. at 628-629 (Sherman Act).

*CompuCredit Corp.* v. *Greenwood*, 565 U.S. 95 (2012), is illustrative. There, individuals who had agreed to arbitrate their disputes with a credit-card company filed a class-action complaint in federal court under the Credit Repair Organizations Act (CROA), 15 U.S.C. 1679 *et seq.* See 565 U.S. at 96. When the defendants moved to compel arbitration under the FAA, the plaintiffs invoked various CROA provisions that required disclosure of a consumer's "right to sue" for statutory violations, *id.* at 99 (quoting 15 U.S.C. 1679c(a)); imposed liability for violations and "repeated[ly]" used "the terms 'action,' 'class action,' and 'court,'" *id.* at 100 (quoting 15 U.S.C. 1679g); and declared that "[a]ny waiver by any consumer of * * * any right of the consumer under" CROA would be "void" and unenforceable, *id.* at 99 (quoting 15 U.S.C. 1679f(a)).

The Court found those provisions insufficient to demonstrate that Congress intended to preclude enforcement of the plaintiffs' agreement to arbitrate their statutory claims. The disclosure provision (Section 1679c(a)) created no consumer right other than "the right to receive the [disclosure] statement" itself. *CompuCredit*, 565 U.S. at 99. The liability provision (Section 1679g) was merely a "guarantee of the legal power to *impose* liability," not a guarantee of access to any particular forum. *Id.* at 102 (emphasis omitted). And because neither of those provisions entitled a consumer to proceed in court, there

18

was no "right of the consumer" to which the non-waiver provision (Section 1679f(a)) might apply. *Id.* at 101-102 (citation omitted). The Court concluded that CROA was "silent on whether claims under the Act can proceed in an arbitral forum," and it accordingly held that "the FAA requires the arbitration agreement to be enforced according to its terms." *Id.* at 104.

*CompuCredit* demonstrates the formidable burden a party bears when seeking to show that "the FAA's mandate has been 'overridden by a contrary congressional command.'" 565 U.S. at 98 (quoting *McMahon*, 482 U.S. at 226). One feature of *CompuCredit* and other decisions is especially notable for present purposes: When examining text and legislative history, the Court has looked for evidence that Congress intended to address arbitration agreements *in particular.* A statute's general reference to litigation rights, even when combined with a provision forbidding the waiver of statutory protections, is insufficient to overcome the FAA's presumption of enforceability. See, *e.g.*, *id.* at 99-102; *Rodriguez de Quijas*, 490 U.S. at 481-482; *McMahon*, 482 U.S. at 227-228.

### 2. *The NLRA does not contain a specific congressional command precluding enforcement of plaintiffs' bilateral arbitration agreements*

a. Plaintiffs in these cases have not argued, and neither the Seventh nor the Ninth Circuit suggested, that *the FLSA* precludes enforcement of the agreements at issue here. Although the FLSA authorizes suit "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated," 29 U.S.C. 216(b), that provision is no different from other "utterly commonplace" provisions that "describe the details of * * * causes of action, including the relief

19

available, in the context of a court suit," *CompuCredit*, 565 U.S. at 100. "[M]ere formulation of the cause of action in this standard fashion" is not "sufficient to establish [a] 'contrary congressional command' overriding the FAA." *Id.* at 100-101 (quoting *McMahon*, 482 U.S. at 226); see *NLRB* v. *Alternative Entm't, Inc.*, No. 16-1385, 2017 WL 2297620, at *13 (6th Cir. May 26, 2017) (Sutton, J., concurring in part and dissenting in part) ("Every circuit to consider the question has concluded that an employee may waive the right to bring a collective action under the [FLSA].").

Plaintiffs' argument thus depends on the premise that the NLRA imposes greater restrictions on the arbitrability of FLSA claims than does the FLSA itself. Nothing in the NLRA's text supports that proposition. Unlike many federal statutes, the NLRA does not specifically bar enforcement of agreements to arbitrate statutory claims or declare such agreements to be unlawful.[2] Plaintiffs therefore rely on general language in

---

[2] See, *e.g.*, 7 U.S.C. 26(n)(2) ("No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section."); 10 U.S.C. 987(e)(3) ("It shall be unlawful for any creditor to extend consumer credit to a covered member or a dependent of such a member with respect to which * * * the creditor requires the borrower to submit to arbitration."); 12 U.S.C. 5567(d)(2) ("[N]otwithstanding any other provision of law, no predispute arbitration agreement shall be valid or enforceable to the extent that it requires arbitration of a dispute arising under this section."); 18 U.S.C. 1514A(e)(2) ("No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section."); see also, *e.g.*, 15 U.S.C. 1226(a)(2); 15 U.S.C. 1639c(e)(1); 22 U.S.C. 290k-11(a); 22 U.S.C. 1650a(a). In addition, Congress has delegated authority to preclude arbitration of certain statutory claims to agencies charged with administering the relevant statutes. See 12 U.S.C.

20

Section 157, which affirms the "Right of employees as to organization, collective bargaining, etc.," by providing as follows:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities.

29 U.S.C. 157.

None of the specific rights enumerated in Section 157 involves the conduct of litigation. And even assuming that the residual phrase—"other concerted activities for the purpose of * * * mutual aid or protection"—encompasses the filing and prosecution of a collective or class suit asserting employment-related claims, see pp. 23-24, *infra*, that language clearly does not *focus* on litigation conduct. Any application that Section 157 may have to employees' litigation activities is much less direct and specific than the statutory language that was at issue in cases like *CompuCredit*, which the Court found insufficient to override the FAA. It is also much less direct and specific than the FLSA provision that authorizes employees to sue "for and in behalf of * * * themselves and other employees similarly situated." 29 U.S.C. 216(b). If that language (in the very statute

---

5 518(b) ("The Bureau, by regulation, may prohibit or impose conditions or limitations on the use of an agreement * * * providing for arbitration of any future dispute between the parties."); 15 U.S.C. 78*o*(*o*) (authorizing the Securities and Exchange Commission to "prohibit, or impose conditions or limitations on the use of, agreements" to arbitrate disputes "arising under the Federal securities laws").

21

that creates plaintiffs' cause of action) is insufficient to
bar enforcement of plaintiffs' agreement to bilateral arbi-
tration of their FLSA claims, it would be anomalous to
conclude that the NLRA's more general language has
that effect.  See *Alternative Entm't*, 2017 WL 2297620,
at \*16 (Sutton, J., concurring in part and dissenting in
part).

Neither plaintiffs nor the courts of appeals that ruled
in their favor have identified any *other* context in which
Section 157 could give employees greater rights to pur-
sue class or collective remedies in court than they would
have under the laws that directly address those issues.
An employee who sought certification of a plaintiff class,
for example, could not invoke Section 157 as a basis for
excusing non-compliance with Rule 23's numerosity and
commonality requirements.  See Fed. R. Civ. P. 23(a)(1)
and (2).  Rather than *expanding* the collective-litigation
rights that employees possess, Section 157 at most pro-
vides employees additional protection when they exer-
cise the collective-litigation rights that other laws con-
fer.  See pp. 23-25, *infra*.  And in determining the scope
of the collective-litigation rights that are otherwise avail-
able to plaintiffs in these cases, it is essential to take into
account the FAA as well as the FLSA.  Although the
FLSA confers a right to sue, including in a collective
action, plaintiffs waived that right by executing arbitra-
tion agreements that were valid under the terms of the
FAA.  Because plaintiffs had no right to pursue collec-
tive actions under the FLSA and FAA, any collective-
litigation right that Section 157 may confer does not
encompass their suits.

The NLRA further provides that an employer who
"interfere[s] with, restrain[s], or coerce[s] employees in
the exercise of the rights guaranteed in section 157" has

22

committed "an unfair labor practice." 29 U.S.C. 158(a)(1). But that provision simply protects the rights set forth in Section 157, which do not include any collective-litigation right beyond those conferred by other provisions of law. An employer would not commit an unfair labor practice by opposing certification of an employee class on the ground that Rule 23's requirements were not satisfied. By the same token, because Section 157 does not clearly displace the rule announced in the FAA, under which an employee's agreement to bilateral arbitration of workplace disputes is "valid, irrevocable, and enforceable," 9 U.S.C. 2, an employer does not "interfere with, restrain, or coerce employees in the exercise of the[ir] rights" by entering into or enforcing such an agreement, 29 U.S.C. 158(a)(1). Cf. *CompuCredit*, 565 U.S. at 101 ("But if a cause-of-action provision mentioning judicial enforcement does not create a right to initial judicial enforcement, the waiver of initial judicial enforcement is not the waiver of a 'right of the consumer,' § 1679f(a).").

b. The NLRA's legislative history does not suggest that Congress intended to preclude agreements to arbitrate bilaterally. Congress's primary goal in enacting the statute was to "promot[e] industrial peace by the recognition of the rights of employees to organize and bargain collectively." S. Rep. No. 573, 74th Cong., 1st Sess. 1 (1935) (Senate Report). Congress focused on "collective bargaining" in the traditional sense of the term—*i.e.*, "the right of employees to bargain collectively through representatives of their own choosing," *id.* at 12—and sought to remove known obstacles such as so-called "company unions," anti-union discrimination by employers, and employer interference with union elections. *Id.* at 9-14; see H.R. Rep. No. 1147, 74th Cong.,

23

1st Sess. 8-9 (1935).  To the extent arbitration was discussed at all, it was only briefly, in making clear that Congress had declined to subject labor disputes to "any form of compulsory arbitration."  Senate Report 2; see *id.* at 8 ("The committee does not believe that the Board should serve as an arbitration agency.").

c.  Because the question is whether the NLRA contains a specific command from *Congress* precluding bilateral arbitration, the Board cannot supply the requisite clarity by gap-filling.  The specific rights enumerated in Section 157 involve self-organization, association with labor unions, and collective bargaining.  Plaintiffs' asserted right is very different from those, both because it concerns dispute resolution outside the workplace (whether in litigation or in arbitration) and because, unlike the enumerated Section 157 rights, it cannot plausibly be derived from the NLRA alone but depends on the FLSA's authorization of collective actions.  Those differences cast doubt on whether the pursuit of an FLSA collective action is among the "other concerted activities for  * * *  mutual aid or protection" to which Section 157 refers.  See *Murphy Oil* Pet. App. 100a-110a (Miscimarra, Member, dissenting in part); *id.* at 146a-156a (Johnson, Member, dissenting); *Alternative Entm't*, 2017 WL 2297620, at *15-*16 (Sutton, J., concurring in part and dissenting in part).

The Board's interpretation of ambiguous NLRA language is entitled to judicial deference, however, and its reading of Section 157's residual phrase may govern in contexts where the FAA does not apply.  For example, an employer may commit an unfair labor practice under Section 158 if it discharges an employee for utilizing collective dispute-resolution mechanisms that are made available by other provisions of law (and that the

24

employee has not validly agreed to waive). Cf. *Eastex, Inc.* v. *NLRB*, 437 U.S. 556, 565-566 (1978) ("[I]t has been held [by the Board and lower courts] that the 'mutual aid or protection' clause [of Section 157] protects employees from retaliation by their employers when they seek to improve working conditions through resort to administrative and judicial forums.").[3] Construing the NLRA to bar such retaliation would not implicate the FAA, and it would be unlikely to conflict with any other federal law.

But the Board is not entitled to deference when it determines how the NLRA should be harmonized with *other* federal statutes—here, the FAA. Cf. *Hoffman Plastic Compounds, Inc.* v. *NLRB*, 535 U.S. 137, 144 (2002) (This Court has "never deferred to the Board's remedial preferences where such preferences potentially trench upon federal statutes and policies unrelated to the

---

[3] Contrary to the Board's decision in *Murphy Oil*, see Pet. App. 18a, this statement from *Eastex* does not indicate that employees have an unwaivable right to pursue collective or class claims. The statement relates only to employees' right to be free from "retaliation," not their right to proceed collectively in litigation even if the employees have agreed to bilateral arbitration. The Court in *Eastex* expressly reserved "the question of what may constitute 'concerted' activities in th[e] context" of litigation, 437 U.S. at 566 n.15, because the particular activity at issue there was "distribut[ing] a union newsletter in nonworking areas of [the employer's] property during nonworking time urging employees to support the union," *id.* at 558. The Court in *Eastex* likewise did not address, and these cases do not present, the question whether an employee is protected from retaliation for invoking collective dispute-resolution mechanisms that he reasonably, but incorrectly, believes are legally available to him. Cf. *Alternative Entm't*, 2017 WL 2297620, at *16 (Sutton, J., concurring in part and dissenting in part) ("The employees' pursuit of collective procedures may or may not bear fruit, but the pursuit will nonetheless be protected from retaliation.").

25

NLRA."). As explained above, the question in these cases is not whether Section 157 provides additional protection for employees who invoke collective-action mechanisms that are available to them under other statutes or procedural rules. At the times they filed suit in these cases, plaintiffs had no FLSA rights to pursue collective actions because they had waived those rights through contracts that were "valid, irrevocable, and enforceable" under the terms of the FAA. 9 U.S.C. 2. The question in these cases is whether Section 157's residual language supersedes that FAA directive and thereby gives plaintiffs *greater* rights to pursue collective litigation than they could assert under the FLSA itself. The Board's determination that the NLRA trumps the FAA in that manner is not entitled to judicial deference.

### B. Enforcing The Parties' Arbitration Agreements In These Cases, In Accordance With The FAA, Would Not Deprive Plaintiffs Of Any Substantive Right Conferred By Another Federal Statute

In holding that pre-dispute agreements to arbitrate federal statutory claims are enforceable, this Court has explained that, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Mitsubishi Motors*, 473 U.S. at 628. The Court has contrasted that type of enforceable contract term with a hypothetical "provision in an arbitration agreement forbidding the assertion of certain statutory rights." *Italian Colors*, 133 S. Ct. at 2310. In holding that the NLRA bars enforcement of the arbitration agreements at issue here, the Seventh and Ninth Circuits viewed those agreements as restricting "substantive" rather than

Exhibit D

"procedural" rights. See *Epic* Pet. App. 17a; *E&Y* Pet. App. 14a. That analysis is misconceived.

1. Enforcement of the arbitration agreements at issue here would not deprive plaintiffs of any substantive right under the FLSA. Most obviously, the agreements do not purport to authorize the defendant-employers to engage in conduct inconsistent with the FLSA's wage-and-hour provisions. See 29 U.S.C. 206 (minimum wages); 29 U.S.C. 207 (maximum hours). Nor do the agreements prevent any employee who has suffered a statutory violation from obtaining (through arbitration) the full measure of relief that a court could award.

The Court's decisions also make clear that, for purposes of determining the enforceability of the arbitration agreements at issue here, the right to pursue a collective action under 29 U.S.C. 216(b) is a procedural rather than a substantive FLSA right. A "class-action waiver merely limits arbitration to the two contracting parties. It no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938." *Italian Colors*, 133 S. Ct. at 2311. An agreement not to proceed collectively also does not undermine substantive FLSA rights, because collective dispute resolution "leaves the parties' legal rights and duties intact and the rules of decision unchanged." *Shady Grove Orthopedic Assocs., P.A.* v. *Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (opinion of Scalia, J.).

2. Enforcement of the parties' arbitration agreements likewise would not deprive plaintiffs of any substantive right under the NLRA. To be sure, the rights enumerated in Section 157—*i.e.*, the rights "to self-organization, to form, join, or assist labor organizations, [and] to bargain collectively through representatives of

Exhibit D

27

their own choosing"—are core substantive rights conferred by the NLRA itself. Plaintiffs in these cases do not contend, however, and the courts below did not suggest, that the arbitration agreements at issue here impair plaintiffs' ability to self-organize, to form or associate with labor organizations, or to engage in collective bargaining.

Section 157's residual phrase confers on employees additional rights "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. 157. Although that residual language could be read to encompass only substantive workplace-related rights closely akin to self-organization or collective bargaining, the Board has construed it more broadly to cover litigation conduct. Assuming that is a permissible interpretation, it does not follow that the right to prosecute a collective action is a *substantive* NLRA right, simply because the enumerated rights are substantive in nature. Rather, if the Board's reading is permissible, it is because the residual phrase can reasonably be construed to cover procedural matters as well as substantive ones. There is no evident reason to treat the right to pursue collective FLSA litigation as "procedural" under the FLSA and yet "substantive" under the NLRA.

3. In reaching the contrary conclusion, the Board incorrectly relied on *National Licorice Co.* v. *NLRB*, 309 U.S. 350 (1940), and *J.I. Case Co.* v. *NLRB*, 321 U.S. 332 (1944). See *Murphy Oil* Pet. App. 33a, 44a-45a, 67a.

In *National Licorice*, an employer whose employees had recently taken action in favor of a union responded by requiring all employees to sign contracts "relinquish[ing] the right to strike, [and] the right to demand a closed shop or signed agreement with any union."

309 U.S. at 355. This Court concluded that the contracts "by their terms * * * imposed illegal restraints upon the employees' rights to organize and bargain collectively guaranteed by" the NLRA. *Id.* at 360.

In *J.I. Case*, after an employee union was certified, the employer refused to bargain with the union, relying on individual contracts it had signed with its employees. 321 U.S. at 333-334. The Court held that the "[i]ndividual contracts * * * may not be availed of to defeat or delay the procedures prescribed by the National Labor Relations Act looking to collective bargaining, nor to exclude the contracting employee from a duly ascertained bargaining unit; nor may they be used to forestall bargaining or to limit or condition the terms of the collective agreement." *Id.* at 337. The Court accordingly ordered the employer to stop using the individual contracts as a ground for declining to bargain collectively. *Id.* at 340-342.

*National Licorice* and *J.I. Case* did not establish any general rule that "employers may not condition employment on the waiver of employees' right to take collective action by seeking class certification or the equivalent." *Murphy Oil* Pet. App. 33a. Rather, both decisions were highly dependent on a key factual feature that is absent here. The agreements at issue in those cases "were the means adopted to eliminate the Union as the collective bargaining agency of [the] employees." *National Licorice*, 309 U.S. at 360 (internal quotation marks omitted); see *J.I. Case*, 321 U.S. at 337 (The employer "used [the agreements] to forestall bargaining or to limit or condition the terms of the collective agreement."); see also *Murphy Oil* Pet. App. 175a-178a (Johnson, Member, dissenting).

To be sure, the Court in *National Licorice* did say that "[t]he effect of [the anti-union] clause [in the employer-created contracts] was to discourage, if not forbid, any presentation of the discharged employee's grievances to appellant through a labor organization or his chosen representatives, or in any way except personally." 309 U.S. at 360. But as the sentence preceding that one makes clear, the Court's concern was that such an agreement would "forestall[] collective bargaining with respect to discharged employees." *Ibid.* The present cases do not implicate that concern. And the Court in *National Licorice* and *J.I. Case* did not confront a situation where another federal statute (like the FAA in the present cases) specifically condoned the employers' conduct.

### C. The FAA's Saving Clause Provides No Sound Basis For Declining To Enforce The Parties' Arbitration Agreements

The Seventh and Ninth Circuits relied in part on the FAA's saving clause, 9 U.S.C. 2, which provides that written arbitration agreements are valid and enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." Those courts viewed "illegality" as one of the generally applicable grounds for contract revocation referenced in the saving clause. *Epic* Pet. App. 15a; *E&Y* Pet. App. 14a. They construed the NLRA to "prohibit employers from making agreements with individual employees barring access to class or collective remedies," *Epic* Pet. App. 7a; see *E&Y* Pet. App. 9a-11a, and concluded that such agreements are "illegal, and meet[] the criteria of the FAA's saving clause for nonenforcement." *Epic* Pet. App. 15a; see *E&Y* Pet. App. 14a, 16a-18a; see also *Murphy Oil* Pet. App. 44a. That analysis is incorrect.

30

1. The congressional policy judgment that the FAA reflects is not simply a preference for an arbitral rather than judicial forum. The FAA mandates enforcement of a "written provision in * * * a contract * * * to settle by arbitration a controversy thereafter arising out of such contract." 9 U.S.C. 2. In addition to memorializing the parties' agreement to arbitrate, the "written provision" that the FAA declares to be enforceable can and typically does describe the procedures by which the arbitration will be conducted. Indeed, a principal virtue of contracted-for arbitration is that it allows contracting parties to choose procedures tailored to their own circumstances. See, *e.g.*, *AT&T Mobility LLC* v. *Concepcion*, 563 U.S. 333, 344-345 (2011).

The FAA thus reflects Congress's belief in "the consensual nature of private dispute resolution," including the freedom of contracting parties "to structure their arbitration agreements as they see fit." *Stolt-Nielsen*, 559 U.S. at 683 (citation omitted). That freedom encompasses the right to "agree on rules under which any arbitration will proceed," including a right of contracting parties to "specify *with whom* they choose to arbitrate their disputes." *Ibid.*; see *Italian Colors*, 133 S. Ct. at 2309. Forcing parties to arbitrate collectively or on a classwide basis, when they have not "*agreed* to do so," is just as inconsistent with the FAA as requiring them to litigate when they have agreed to arbitrate. *Stolt-Nielsen*, 559 U.S. at 684; cf. *Litton Fin. Printing Div.* v. *NLRB*, 501 U.S. 190, 200-201 (1991) (noting "the strong statutory principle, found in both the language of the NLRA and its drafting history, of consensual rather than compulsory arbitration").

2. The saving clause permits courts to "invalidate an arbitration agreement based on 'generally applicable

31

contract defenses' like fraud or unconscionability, but not on legal rules that 'apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, No. 16-32 (May 15, 2017), slip op. 4 (quoting *Concepcion*, 563 U.S. at 339). The types of generally applicable rules of contract enforceability that the saving clause covers are at least predominantly, if not exclusively, the province of state law.[4] This Court has never applied the saving clause to a case in which another *federal* statute was alleged to render the parties' arbitration agreement unenforceable.

To be sure, the saving clause is not explicitly limited to state-law grounds for contract revocation, and in theory it would cover a (hypothetical) federal law that barred enforcement of contracts on a generally applicable ground like fraud. But the Seventh and Ninth Circuits' interpretation of the NLRA is not that type of arbitration-neutral rule. Those courts viewed their rule as being

---

[4] State-law defenses were thus at issue in every case in which this Court has applied the saving clause—or, more commonly, declined to do so because the defense was found to discriminate against arbitration. See, *e.g.*, *Kindred Nursing Ctrs.*, slip op. 4-7 (invalidating defense under Kentucky law that discriminated against arbitration); *Preston* v. *Ferrer*, 552 U.S. 346, 354-356 (2008) (California law); *Doctor's Assocs., Inc.* v. *Casarotto*, 517 U.S. 681, 688 (1996) (Montana law); *Allied-Bruce Terminix Cos.* v. *Dobson*, 513 U.S. 265, 269, 281-282 (1995) (Alabama law); *Southland Corp.* v. *Keating*, 465 U.S. 1, 10, 16 & n.11 (1984) (California law). And in considering and rejecting various claims that other *federal* statutes precluded enforcement of arbitration agreements, the Court has never treated the FAA's saving clause as relevant to its inquiry. See, *e.g.*, *CompuCredit*, 565 U.S. at 99-104; *Randolph*, 531 U.S. at 89-92; *Gilmer*, 500 U.S. at 26-33; *Rodriguez de Quijas*, 490 U.S. at 479-484; *McMahon*, 482 U.S. at 227-242; *Mitsubishi Motors*, 473 U.S. at 628-629; see also pp. 16-17, *supra*.

32

arbitration-neutral because it focuses on the agreements' requirement of *bilateral* arbitration, rather than on the obligation to arbitrate as such. The Ninth Circuit stated that "[i]t would equally violate the NLRA for [an employer] to require its employees to sign a contract requiring the resolution of all work-related disputes *in court* and in 'separate proceedings.'" *E&Y* Pet. App. 13a. The Seventh Circuit likewise described the purported flaw in the challenged agreement as its requirement of bilateral dispute-resolution procedures: "If Epic's provision had permitted collective arbitration, it would not have run afoul of Section [157]." *Epic* Pet. App. 17a.

This Court's decisions make clear, however, that the FAA's saving clause does not encompass every rule of contract enforceability that is *capable* of application to contracts other than arbitration agreements. See, *e.g.*, *Kindred Nursing Ctrs.*, slip op. 5-6; *Concepcion*, 563 U.S. at 341-342. The Court in *Concepcion* applied that principle in the specific context of a state-law rule against enforcement of class-action waivers contained in certain consumer contracts. See 563 U.S. at 340 (describing relevant state-law rule). The Court described the ways in which use of class procedures can be expected to subvert the advantages that ordinarily attend arbitration. See *id.* at 348-351. The Court explained that the FAA's saving clause should not be construed "to preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives" because "the act cannot be held to destroy itself." *Id.* at 343 (citations omitted). It concluded that the FAA preempted the state-law rule barring enforcement of class-action waivers because "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of

arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 344.

Principles of conflict preemption do not directly govern the interpretive question that is currently before the Court, which involves the proper harmonization of two *federal* statutes. But *Concepcion* underscores that the rule adopted by the Seventh and Ninth Circuits substantially disserves the FAA's purposes, even though that rule would not preclude enforcement of *all* agreements to arbitrate employee claims, and even though it would also preclude enforcement of hypothetical employee-employer contracts that mandated individual suits in court. As the dissenting judge in *Ernst & Young* explained, the rule those circuits found to be implicit in the NLRA "would disproportionately and negatively impact arbitration agreements by requiring procedures that 'interfere with fundamental attributes of arbitration.'" *E&Y* Pet. App. 40a (Ikuta, J., dissenting) (brackets omitted) (quoting *Concepcion*, 563 U.S. at 344). Just as the saving clause was held not to encompass the state-law rule at issue in *Concepcion*, it does not encompass the analogous federal-law rule that the Seventh and Ninth Circuits derived from the NLRA. See *ibid.* Congress remains free to adopt such a rule, of course, but it must clearly and specifically express its intent to override the FAA's general federal policy—which Congress did not do in the NLRA.

34

## CONCLUSION

The judgments of the courts of appeals in Nos. 16-285 and 16-300 should be reversed, and the judgment of the court of appeals in No. 16-307 should be affirmed.

Respectfully submitted.

JEFFREY B. WALL
  *Acting Solicitor General*
MALCOLM L. STEWART
  *Deputy Solicitor General*
ALLON KEDEM
  *Assistant to the Solicitor General*

JUNE 2017

# APPENDIX

1.  9 U.S.C. 2 provides:

**Validity, irrevocability, and enforcement of agreements to arbitrate**

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

2.  29 U.S.C. 157 provides:

**Right of employees as to organization, collective bargaining, etc.**

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

(1a)

3.   29 U.S.C. 158 provides:

**Unfair labor practices**

**(a)   Unfair labor practices by employer**

It shall be an unfair labor practice for an employer—

(1)   to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

(2)   to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: *Provided,* That subject to rules and regulations made and published by the Board pursuant to section 156 of this title, an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay;

(3)   by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided,* That nothing in this subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any action defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective-bargaining unit covered by such agreement when made, and (ii) unless following an

3a

election held as provided in section 159(e) of this title within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election have voted to rescind the authority of such labor organization to make such an agreement: *Provided further*, That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

(4)   to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter;

(5)   to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

**(b)   Unfair labor practices by labor organization**

It shall be an unfair labor practice for a labor organization or its agents—

(1)   to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title:   *Provided*, That this paragraph shall not impair the right of a labor organization to prescribe its own rules with respect to the acquisition or reten-

4a

tion of membership therein; or (B) an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances;

(2)  to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership;

(3)  to refuse to bargain collectively with an employer, provided it is the representative of his employees subject to the provisions of section 159(a) of this title;

(4)(i)  to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

(A)  forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by subsection (e) of this section;

5a

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title: *Provided*, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;

(C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 159 of this title;

(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work:

*Provided*, That nothing contained in this subsection shall be construed to make unlawful a refusal by any person to enter upon the premises of any employer (other than his own employer), if the employees of

6a

such employer are engaged in a strike ratified or approved by a representative of such employees whom such employer is required to recognize under this subchapter: *Provided further*, That for the purposes of this paragraph (4) only, nothing contained in such paragraph shall be construed to prohibit publicity, other than picketing, for the purpose of truthfully advising the public, including consumers and members of a labor organization, that a product or products are produced by an employer with whom the labor organization has a primary dispute and are distributed by another employer, as long as such publicity does not have an effect of inducing any individual employed by any person other than the primary employer in the course of his employment to refuse to pick up, deliver, or transport any goods, or not to perform any services, at the establishment of the employer engaged in such distribution;

(5)   to require of employees covered by an agreement authorized under subsection (a)(3) of this section the payment, as a condition precedent to becoming a member of such organization, of a fee in an amount which the Board finds excessive or discriminatory under all the circumstances.   In making such a finding, the Board shall consider, among other relevant factors, the practices and customs of labor organizations in the particular industry, and the wages currently paid to the employees affected;

(6)   to cause or attempt to cause an employer to pay or deliver or agree to pay or deliver any money or other thing of value, in the nature of an exaction, for services which are not performed or not to be performed; and

7a

(7)   to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:

(A)   where the employer has lawfully recognized in accordance with this subchapter any other labor organization and a question concerning representation may not appropriately be raised under section 159(c) of this title,

(B)   where within the preceding twelve months a valid election under section 159(c) of this title has been conducted, or

(C)   where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided*, That when such a petition has been filed the Board shall forthwith, without regard to the provisions of section 159(c)(1) of this title or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: *Provided further*, That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consum-

ers) that an employer does not employ members of, or have a contract with, a labor organization, unless an effect of such picketing is to induce any individual employed by any other person in the course of his employment, not to pick up, deliver or transport any goods or not to perform any services.

Nothing in this paragraph (7) shall be construed to permit any act which would otherwise be an unfair labor practice under this subsection.

**(c) Expression of views without threat of reprisal or force or promise of benefit**

The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.

**(d) Obligation to bargain collectively**

For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: *Provided*, That where there is in effect a collective-bargaining contract covering employees in an industry

9a

affecting commerce, the duty to bargain collectively shall also mean that no party to such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

(1)   serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;

(2)   offers to meet and confer with the other party for the purpose of negotiating a new contract or a contract containing the proposed modifications;

(3)   notifies the Federal Mediation and Conciliation Service within thirty days after such notice of the existence of a dispute, and simultaneously therewith notifies any State or Territorial agency established to mediate and conciliate disputes within the State or Territory where the dispute occurred, provided no agreement has been reached by that time; and

(4)   continues in full force and effect, without resorting to strike or lock-out, all the terms and conditions of the existing contract for a period of sixty days after such notice is given or until the expiration date of such contract, whichever occurs later:

The duties imposed upon employers, employees, and labor organizations by paragraphs (2) to (4) of this subsection shall become inapplicable upon an intervening certification of the Board, under which the labor organization or individual, which is a party to the contract, has been superseded as or ceased to be the representa-

10a

tive of the employees subject to the provisions of section 159(a) of this title, and the duties so imposed shall not be construed as requiring either party to discuss or agree to any modification of the terms and conditions contained in a contract for a fixed period, if such modification is to become effective before such terms and conditions can be reopened under the provisions of the contract. Any employee who engages in a strike within any notice period specified in this subsection, or who engages in any strike within the appropriate period specified in subsection (g) of this section, shall lose his status as an employee of the employer engaged in the particular labor dispute, for the purposes of sections 158, 159, and 160 of this title, but such loss of status for such employee shall terminate if and when he is reemployed by such employer. Whenever the collective bargaining involves employees of a health care institution, the provisions of this subsection shall be modified as follows:

(A) The notice of paragraph (1) of this subsection shall be ninety days; the notice of paragraph (3) of this subsection shall be sixty days; and the contract period of paragraph (4) of this subsection shall be ninety days.

(B) Where the bargaining is for an initial agreement following certification or recognition, at least thirty days' notice of the existence of a dispute shall be given by the labor organization to the agencies set forth in paragraph (3) of this subsection.

(C) After notice is given to the Federal Mediation and Conciliation Service under either clause (A) or (B) of this sentence, the Service shall promptly communicate with the parties and use its best efforts,

11a

by mediation and conciliation, to bring them to agreement. The parties shall participate fully and promptly in such meetings as may be undertaken by the Service for the purpose of aiding in a settlement of the dispute.

**(e) Enforceability of contract or agreement to boycott any other employer; exception**

It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible[1] and void: *Provided*, That nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting of work to be done at the site of the construction, alteration, painting, or repair of a building, structure, or other work: *Provided further*, That for the purposes of this subsection and subsection (b)(4)(B) of this section the terms "any employer", "any person engaged in commerce or an industry affecting commerce", and "any person" when used in relation to the terms "any other producer, processor, or manufacturer", "any other employer", or "any other person" shall not include persons in the relation of a jobber, manufacturer, contractor, or subcontractor working on

---

[1] So in original. Probably should be "unenforceable".

12a

the goods or premises of the jobber or manufacturer or performing parts of an integrated process of production in the apparel and clothing industry: *Provided further,* That nothing in this subchapter shall prohibit the enforcement of any agreement which is within the foregoing exception.

**(f)  Agreement covering employees in the building and construction industry**

It shall not be an unfair labor practice under subsections (a) and (b) of this section for an employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members (not established, maintained, or assisted by any action defined in subsection (a) of this section as an unfair labor practice) because (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such agreement, or (2) such agreement requires as a condition of employment, membership in such labor organization after the seventh day following the beginning of such employment or the effective date of the agreement, whichever is later, or (3) such agreement requires the employer to notify such labor organization of opportunities for employment with such employer, or gives such labor organization an opportunity to refer qualified applicants for such employment, or (4) such agreement specifies minimum training or experience qualifications for employment or provides for priority in opportunities for employment based upon length of service with

13a

such employer, in the industry or in the particular geographical area: *Provided*, That nothing in this subsection shall set aside the final proviso to subsection (a)(3): *Provided further*, That any agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 159(c) or 159(e) of this title.

**(g)   Notification of intention to strike or picket at any health care institution**

A labor organization before engaging in any strike, picketing, or other concerted refusal to work at any health care institution shall, not less than ten days prior to such action, notify the institution in writing and the Federal Mediation and Conciliation Service of that intention, except that in the case of bargaining for an initial agreement following certification or recognition the notice required by this subsection shall not be given until the expiration of the period specified in clause (B) of the last sentence of subsection (d) of this section.   The notice shall state the date and time that such action will commence.   The notice, once given, may be extended by the written agreement of both parties.

Exhibit E



SUPREME COURT
OF THE UNITED STATES

Visiting the Court | Touring the Building | Exhibitions

Search:    All Documents    Docket      **Advanced Search**

Enter Search Text:

**Home** | **Search Results**

| Opinions | Oral Arguments | Case Documents | Rules & Guidance | News Media | About the Court |

No. 16-300

| | |
|---|---|
| Title: | Ernst & Young LLP, et al., Petitioners |
| | v. |
| | Stephen Morris, et al. |
| Docketed: | September 8, 2016 |
| Lower Ct: | United States Court of Appeals for the Ninth Circuit |
|  Case Nos.: | (13-16599) |
|  Decision Date: | August 22, 2016 |

**Questions
Presented**

~~~Date~~~   ~~~~~~~Proceedings and Orders~~~~~~~~~~~~~~~~~~~~

Sep 8 2016    Petition for a writ of certiorari filed. (Response due October 11, 2016)

Sep 21 2016   Consent to the filing of amicus curiae briefs, in support of either party or of neither party, received from counsel for petitioners.

Sep 29 2016   Consent to the filing of amicus curiae briefs, in support of either party or of neither party, received from counsel for respondents

Oct 3 2016    Brief amici curiae of National Association of Manufacturers, et al. filed. VIDED.

Oct 3 2016    Brief amicus curiae of Chamber of Commerce of the United States filed.

Oct 6 2016    Order extending time to file response to petition to and including November 14, 2016.

Oct 7 2016    Brief amicus curiae of International Association of Defense Counsel filed.

Oct 10 2016   Brief amicus curiae of Atlantic Legal Foundation filed.

Oct 11 2016   Brief amicus curiae of The Employers Group filed.

Oct 11 2016   Brief amicus curiae of The Retail Litigation Center, Inc. filed.

Exhibit E

Exhibit E

Oct 11 2016   Brief amicus curiae of The Business Roundtable filed.

Oct 11 2016   Brief amicus curiae of New England Legal Foundation filed.

Nov 15 2016   Order further extending time to file response to petition to and including November 21, 2016.

Nov 21 2016   Brief of respondents Stephen Morris, et al. in support of granting the petition for a writ of certiorari filed.

Dec 6 2016   Reply of petitioners Ernst & Young LLP, et al. filed.

Dec 7 2016   DISTRIBUTED for Conference of January 6, 2017.

Jan 9 2017   DISTRIBUTED for Conference of January 13, 2017.

Jan 13 2017   Petition GRANTED The petition for a writ of certiorari in Nos. 16-285 and 16-307 are granted. The cases are consolidated and a total of one hour is allotted for oral argument.

Jan 25 2017   The following briefing schedule is adopted: Petitioners in Nos. 16-285 and 16-300 and respondents in No. 16-307 will file opening and reply briefs under the schedule set forth in Rules 25.1 and 25.3. Respondents in Nos. 16-285 and 16-300 and petitioner in No. 16-307 will file response briefs under the schedule set forth in Rule 25.2. VIDED.

Feb 2 2017   Consent to the filing of amicus curiae briefs,in support of either party or of neither party, received from counsel for the petitioners Ernst & Young LLP, et al.

Feb 21 2017   The time to file the joint appendix and the opening briefs is extended to and including April 28, 2017. VIDED.

Feb 21 2017   The time to file the response briefs is extended to and including July 27, 2017. VIDED.

Apr 13 2017   Consent to the filing of amicus curiae briefs in support of either party or neither party from counsel for respondents Morris, et al.

Apr 28 2017   The time to file the joint appendix and the opening briefs is further extended to and including June 9, 2017. VIDED.

Apr 28 2017   The time to file the response briefs is further extended to and including August 9, 2017. VIDED.

Jun 9 2017   Joint appendix for Ernst & Young LLP, et al. filed. (Statement of costs filed.)

Jun 9 2017   Brief of petitioners Ernst & Young LLP, et al. filed.

Jun 16 2017   Brief amici curiae of Council on Labor Law Equality, et al. filed. VIDED.

Jun 16 2017   Brief amicus curiae of Bristol Farms filed. VIDED

Jun 16 2017   Brief amici curiae of Law Professors filed. VIDED.

Jun 16 2017   Brief amici curiae of National Association of Manufacturers, et al. filed. VIDED.

Jun 16 2017   Brief amicus curiae of the United States supporting Petitioners in Nos. 16-285 and 16-300 and supporting Respondents in No. 16-307 filed. VIDED.

Jun 16 2017   Brief amicus curiae of Retail Litigation Center, Inc. filed. VIDED.

Jun 16 2017   Brief amicus curiae of Chamber of Commerce of the United States of America filed. VIDED.

Jun 16 2017   Brief amicus curiae of Business Roundtable supporting Epic Systems Corp., Ernst & Young LLP, and Murphy Oil USA, Inc. filed. VIDED.

Jun 16 2017   Brief amicus curiae of The Employers Group in support of Petitioners in Nos. 16-285 and 16-300 and Respondent Murphy Oil in No. 16-307 filed. VIDED.

Jun 16 2017   Brief amicus curiae of Washington Legal Foundation in support of Petitioners in Nos. 16-285 and 16-300 and Respondent Murphy Oil USA,Inc. in No.16-307 filed. VIDED.

Jun 16 2017   Brief amicus curiae of HR Policy Association filed. VIDED.

Jun 16 2017   Brief amicus curiae of Atlantic Legal Foundation filed. VIDED.

Exhibit E

**Exhibit E**

Jun 16 2017   Brief amicus curiae of DRI-Voice of the Defense Bar filed. VIDED.

Jun 16 2017   Brief amicus curiae of International Association of Defense Counsel filed. VIDED.

Jun 16 2017   Brief amici curiae of American Staffing Association, et al. filed. VIDED.

Jun 16 2017   Brief amicus curiae of Mortgage Bankers Association and State Mortgage Lending Assocaions filed. VIDED.

Jun 16 2017   Brief amicus curiae of New England Legal Foundation filed. VIDED.

| ~~Name~~~~~~~~~~~~~~~~~~~ | ~~~~~~Address~~~~~~~~~~~~~~~~~ | ~~Phone~~~ |
|---|---|---|
| **Attorneys for Petitioners:** | | |
| Kannon K. Shanmugam | Williams & Connolly LLP | (202) 434-5000 |
|    Counsel of Record | 725 Twelfth Street, N.W. | |
| | Washington, DC  20005 | |
| | kshanmugam@wc.com | |
| Party name: Ernst & Young LLP, et al. | | |
| **Attorneys for Respondents:** | | |
| Max Folkenflik | Folkenflik & McGerity, LLP | (212) 757-0400 |
|    Counsel of Record | 1500 Broadway, Suite 812 | |
| | New York, NY  10036 | |
| | mfolkenflik@fmlaw.net | |
| Party name: Stephen Morris, et al. | | |
| | | |
| Harold C. Becker | 815 16th St., NW | (202) 637-5000 |
| | Washington, DC  20006 | |
| | cbecker@aflcio.org | |
| Party name: Sheila M. Hobson | | |
| **Other:** | | |
| David M. Axelrad | Horvitz & Levy LLP | (818) 995-0800 |
| | 3601 W. Olive Ave., 8th floor | |
| | Burbank, CA  91505-468 | |
| | daxelrad@horvitzlevy.com | |
| Party name: DRI-Voice of the Defense Bar | | |
| | | |
| Edward Fouad Berbarie | Littler Mendelson, P.C. | (214)-880-8100 |
| | 2001 Ross Avenue, Suite 1500, Lock Box 116 | |
| | Dallas, TX  75201-2931 | |
| | eberbarie@littler.com | |
| Party name: National Association of Manufacturers, et al. | | |
| | | |
| Stephen Andrew Fogdall | Schnader Harrison Segal & Lewis LLP | (215)-751-2581 |
| | 1600 Market Street Suite 3600 | |
| | Philadelphia, PA  19103 | |

**Exhibit E**

**Exhibit E**

sfogdall@schnader.com

Party name: Mortgage Bankers Association and State Mortgage Lending Assocaions

Beth Heifetz                         Jones Day                              (202) 879-3939
                                     51 Louisiana Ave. NW
                                     Washington, DC  20001
                                     bheifetz@jonesday.com

Party name: The Employers Group in support of Petitioners in Nos. 16-285 and 16-300 and Respondent Murphy Oil in No. 16-307

William M. Jay                       Goodwin Procter LLP                    (202) 346-4000
                                     901 New York Avenue, N.W.
                                     Washington, DC  20001
                                     wjay@goodwinlaw.com

Party name: Business Roundtable supporting Epic Systems Corp., Ernst & Young LLP, and Murphy Oil USA, Inc.

Steven B. Katz                       Constangy Brook Smith & Prophete LLP   (310) 999-7775
                                     2029 Century Park East Suite 1100
                                     Los Angeles, CA  90067
                                     skatz@constangy.com

Party name: Bristol Farms

Martin S. Kaufman                    Atlantic Legal Foundation              (914) 834-3322
                                     500 Mamaroneck Avenue
                                     Harrison, NY  10528
                                     mskaufman@atlanticlegal.org

Party name: Atlantic Legal Foundation

John B. Lewis                        Baker & Hostetler LLP                  (216) 621-0200
                                     Key Tower, Suite 2000
                                     127 Public Square
                                     Cleveland, OH  44114
                                     jlewis@bakerlaw.com

Party name: American Staffing Association, et al.

Thomas R. McCarthy                   Consovoy McCarthy Park PLLC            703-243-9423
                                     Antonin Scalia Law School Supreme Court
                                     3033 Wilson Boulevard, Suite 700
                                     Arlington, VA  22201
                                     tom@consovoymccarthy.com

Party name: Law Professors

Christopher Charles Murray           Ogletree Deakins Nash Smoak & Stewart PC.   317-916-2522

**Exhibit E**

Exhibit E

111 Monument Circle, Suite 4600
Indianapolis, IN  46260
christoopher.murray@odnss.com

Party name: Council on Labor Law Equality, et al.


Andrew J. Pincus                          Mayer Brown LLP                          (202) 263-3000
1999 K Street, NW
Washington, DC  20006
apincus@mayerbrown.com

Party name: Chamber of Commerce of the United States of America


Benjamin G. Robbins                       New England Legal Foundation             (617) 695-3660
150 Lincoln Street
Boston, MA  02111-2504
benrobbins@nelfonline.org

Party name: New England Legal Foundation


Richard A. Samp                           Washington Legal Foundation              (202) 588-0302
2009 Massachusetts Avenue, N.W.
Washington, DC  20036
rsamp@wlf.org

Party name: Washington Legal Foundation in support of Petitioners in Nos. 16-285 and 16-300 and Respondent
Murphy Oil USA,Inc. in No.16-307


Samuel Scott Shaulson                     Morgan Lewis Bockius LLP                 212.309.6718
101 Park Avenue
New York, NY  10178
sshaulson@morganlewis.com

Party name: HR Policy Association


Mary-Christine Sungaila                    Haynes and Boone, LLP                    (949) 202-3062
600 Anton Blvd., Suite 700
Costa Mesa, CA  92626
mc.sungaila@haynesboone.com

Party name: International Association of Defense Counsel


Adam G. Unikowsky                         Jenner & Block, LLP                      (202) 639-6000
1099 New York Avenue, NW, Suite 900
Washington, DC  20001-4412
aunikowsky@jenner.com

Party name: Retail Litigation Center, Inc.


Jeffrey B. Wall                           Acting Solicitor General                 (202) 514-2217
United States Department of Justice

Exhibit E

Exhibit E

950 Pennsylvania Avenue, N.W.

Washington, DC  20530-0001

SupremeCtBriefs@USDOJ.gov

Party name: United States

July 05, 2017 | Version 2014.2

**Home** | **About Us** | **Contact Us** | **Fellows Program** | **Jobs** | **Building Regulations**
**Help** | **Links** | **FAQ** | **Site Map** | **Policies and Notices** | **Privacy Policy** | **USA.GOV**

## Supreme Court of the United States

Exhibit E

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and service via transmittal of a Notice of Electronic Filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 5, 2017, at Los Angeles, California.

_____
/s/ Matthew C. Kane
MATTHEW C. KANE

DEFENDANT'S REPLY IN SUPPORT OF PROTECTIVE MOTION TO STAY ACTION PENDING U.S. SUPREME COURT DECISION OR, ALTERNATIVELY, PENDING APPELLATE REVIEW OF ANY DENIAL OF DEFENDANT'S PENDING MOTION TO COMPEL INDIVIDUAL ARBITRATION (DKT. #29)