1
2
3
4
5
6
7

8                                    **UNITED STATES DISTRICT COURT**

9                              **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11   **LUIS GUERRERO,**<br>*on behalf of himself, all others similarly situated,*<br>*and on behalf of the general public*, | **1:16-cv-1300-LJO-JLT** |
| 12              **Plaintiffs,** | **MEMORANDUM DECISION AND** |
| 13 | **ORDER GRANTING DEFENDANT'S**<br>**MOTION TO STAY AND HOLDING IN** |
| 14              **v.** | **ABEYANCE DEFENDANT'S MOTION**<br>**TO COMPEL ARBITRATION** |
| 15   **HALLIBURTON  ENERGY SERVICES, INC.;**<br>**and DOES 1-100,** | |
| 16              **Defendants.** | **(ECF Nos. 29 & 38)** |

17

18       This is a putative class action lawsuit brought by Plaintiff Luis Guerrero, who was formerly

19  employed by Defendant Halliburton Energy Services, Inc., seeking to represent a class composed of

20  "[a]ll persons who are employed or have been employed by Defendant in the State of California as

21  hourly, Non-Exempt [sic] truck workers, industrial truck workers, industrial truck drivers, industrial

22  vehicle drivers, industrial workers, and/or other similar job designations and titles during the period of

23  the relevant statute of limitations," and several derivative sub-classes. ECF No. 21 (Second Amended

24  Complaint or "SAC") ¶ 31. Plaintiff alleges that Defendant violated provisions of the California Labor

25  Code, Business and Professions Code, and several of the Industrial Welfare Commission's Wage Orders

1  for at least four years prior to the 2016 filing of this action in failing to pay all "straight time wages,"

2  failing to pay overtime, failing to pay all wages due at the time of termination, and for unfair business

3  practices. *See id.* ¶¶ 5-17, 24-25.

4        The Court previously adjudicated two of Defendant's motions pursuant to Federal Rule of Civil

5  Procedure 12(b)(6), ECF Nos. 10 & 20, and provided Plaintiff with one final opportunity to amend the

6  deficiencies it identified in his first amended complaint. ECF No. 20 at 16. Plaintiff subsequently filed

7  the SAC, ECF No. 21, and Defendant answered, ECF No. 23. Now before the Court are (1) Defendant's

8  motion to compel individual arbitration (ECF No. 29) and (2) Defendant's protective motion to stay

9  pending a Supreme Court decision, or alternatively, pending appellate review of any denial of

10  Defendant's pending motion to compel (ECF No. 38). Both matters are fully briefed, and have been

11  submitted for a decision on the papers pursuant to Local Rule 230(g). ECF Nos. 35 & 42.

12        For the reasons that follow, the Court GRANTS Defendant's motion to stay these proceedings

13  pending the Supreme Court's forthcoming decision in *Ernst & Young LLP v. Morris*, Dkt. No. 16-300

14  and HOLDS IN ABEYANCE Defendant's motion to compel arbitration.

15  ## I. <u>BACKGROUND</u>

16        The following facts are drawn from Plaintiff's sworn declaration (ECF No. 31-1) and judicially

17  noticeable documents[1] filed in conjunction with the parties' pleadings.

18

19

---

[1] These documents include:

    1) the May 12, 2017 declaration of Jason Merritt, to which are attached copies of Plaintiff's initial online application for a position with Defendant, the data overview of Plaintiff's application, the employment offer letter sent by Defendant to Plaintiff, Defendant's Dispute Resolution Program ("DRP") (ECF No. 29-1). Merritt, an employee of Defendant in its Human Resources department, lays a sufficient foundation for the admission of these materials in his declaration as business records of Defendant under Federal Rule of Evidence 803(6). *See Assurance Co. of America v. Nat'l Fire & Marine Ins. Co.,* 595 Fed. App'x 679, 672-73 (9th Cir. Dec. 1, 2014);

    2) the May 12, 2017 declaration of Melinda Miner, to which are attached copies of the DRP Plan and Rules in effect during 2014-15, the "Road to Resolution" brochure explaining the dispute resolution options available, and an explanatory cover letter mailed to Plaintiff (ECF No. 29-2). Miner, an employee of Defendant who helped administer the DRP, lays a sufficient foundation for the admission of these materials in her declaration as business records of Defendant under Federal Rule of Evidence 803(6). *See Nat'l Fire & Marine Ins. Co.*, 595 Fed. App'x at 672-7.

**A.**     <u>**Plaintiff's Employment and Signing of the Arbitration Agreements**</u>

Plaintiff worked as a driver for Defendant from approximately May 5, 2014 to January 12, 2015. Guerrero Decl. ¶ 2. On March 3, 2014, Plaintiff submitted an online application for employment to be a driver for Defendant, in which he acknowledged the arbitration provision. *Id.* ¶¶ 3-4. Specifically, the application that Plaintiff completed contained the following disclosure:

> I agree that, in return for its consideration of my application for employment, any dispute between Halliburton Energy Services, Inc. and me related to the application process will be resolved under the Halliburton Dispute Resolution Program ["DRP" or "Plan"], and that I may obtain a copy of the DRP from the Human Resources Department. I understand that this means that disputes involving legal issues must be submitted to binding arbitration, and that I am waiving any right to maintain a lawsuit or have a jury trial for any such dispute. I also understand that this does not obligate Halliburton Energy Services, Inc. to employ me, but that if I am employed, any dispute between Halliburton Energy Services, Inc. and me relating to my employment also will be subject to the DRP.

Merritt Decl. (ECF No. 29-1) ¶ 10; *Id.*, Ex. A.

On March 19, 2014, Defendant sent Plaintiff a letter offering him employment as a driver. Guerrero Decl. ¶ 5. The offer letter stated that Plaintiff's acceptance of employment with Defendant "means you also agree to and are bound by the terms of the Halliburton Dispute Resolution Program … This will be true during your employment and after your employment should terminate." Merritt Decl. ¶ 14; *Id.*, Ex. C.

Plaintiff accepted Defendant's offer and began employment with Defendant as a driver on May 5, 2014. Guerrero Decl. ¶ 6. On May 5, 2014, Plaintiff received and executed a "Driver Responsibilities Agreement," which included a provision that indicated that his signature of the agreement amounted to his agreement that "[a]ny disputes arising under or in any way related to the Agreement shall be resolved exclusively through the Halliburton Dispute Resolution Program which includes binding arbitration as its last step." *Id.* ¶ 7; Merritt Decl. ¶ 15; *Id.*, Ex. D.

Plaintiff avers that he did not have the opportunity to review or ask questions about the three mandatory arbitration agreements he signed in connection with his employment with Defendant, nor was he given the opportunity to negotiate the terms of the arbitration agreements, which were presented to

1  him on pre-typed forms. Guerrero Decl. ¶¶ 8-9, 13. None of the three arbitration agreements Plaintiff

2  signed had an opt-out provision. *Id.* ¶ 14.

3  **B.**     **The Terms of the DRP**

4          In three instances—when he executed his employment application, accepted the offer letter, and

5  signed the Driver Responsibilities Agreement upon beginning employment—each of which incorporated

6  the DRP by reference, *see* Merritt Decl. ¶¶ 10, 14, 15, Plaintiff agreed that "[a]ll disputes not otherwise

7  settled by the Parties shall be finally and conclusively resolved through arbitration under this Plan and

8  the Rules, instead of through trial before a Court," and that "[p]roceedings under the Plan, including

9  arbitration, shall be the exclusive, final and binding method by which Disputes are resolved. DRP Plan

10 (ECF No. 29-2, Ex. A) at 5.

11         The DRP further provides, in relevant part, as follows:

12         "Dispute" means **all legal and equitable claims, demands, and controversies, of
           whatever nature or kind**, whether in contract, tort, under statute or regulation, or some
13         other law, between persons bound by the Plan or by an agreement to resolve Disputes
           under the Plan … including, but no limited to, any matters with respect to … **[t]he
14         employment** or potential re-employment of an Employee, including the terms, conditions
           or termination of such employment with the Company; … [a]ny other matter relating to
15         or concerning the relationship between the Employee and the Company including, by
           way of example and without limitation, allegations of … **failure to pay wages**…
16         …

17         **Each Dispute shall be arbitrated on an individual basis. Neither the Company nor
           any Employee or Applicant may pursue any Dispute on a class action, collective
18         action or consolidated basis or in a representative capacity on behalf of other
           persons or entities who are claimed to be similarly situated, or participate as a class
19         member in such a proceeding. The arbitrator in any proceeding under this Plan
           shall have no authority to conduct the matter as a consolidated, class, or collective
20         action.**
           …

21

22         If the procedural limitation in [the proceeding subparagraph] is held unenforceable by a
           court in a proceeding in which a party seeks to pursue a class or collective action or
23         otherwise act in a representative capacity, **then this Plan shall not apply with respect to
           that class or representative action which shall proceed instead before the court**. If
24         the court, however, ultimately denies the party's request to proceed on a class, collective
           or representative basis, then the party's individual claim(s) shall be subject to this Plan
25         and referable to arbitration pursuant to its terms.
           ….

                                            4

The [Federal Arbitration Act ("FAA")] shall apply to this Plan, the Rules and any proceedings under the Plan or the Rules, including any actions to compel, enforce, vacate or confirm proceedings, awards, orders of an arbitrator, or settlements under the Plan or the Rules.
…

**The substantive legal rights, remedies and defenses of all Parties are preserved** … The Plan shall not be construed to grant additional substantive, legal, or contractual rights, remedies or defense which would not be applied by a court of competent jurisdiction in the absence of the Plan unless expressly authorized by these provisions.
…

The Plan shall apply to the Dispute pending before any local, state or federal administrative body or court **to the extent allowed by law**.
…

*See id.* at 2-10 (emphasis added).

## II. <u>MOTION TO STAY</u>

In *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (2016), the Ninth Circuit held that "requiring employees to sign an agreement precluding them from bringing in any forum, a concerted legal claim regarding wages, hours, and terms and conditions of employment" violates section 7 of the National Labor Relations Act ("NLRA"), which protects the right of employees "to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." The concerted action waiver considered in *Morris* required the plaintiffs, employees of the defendant company, to sign an agreement to pursue their legal claims against the company exclusively through arbitration, and to arbitrate "only as individuals and in 'separate proceedings.'" *Id.* at 979. The plaintiffs in *Morris* relied upon the following determination by the National Labor Relations Board ("NLRB"), that an employer violates NLRA § 7

when it requires employees covered by the Act, as a condition of their employment, to sign an agreement that precludes them from filing joint, class, or collective claims addressing their wages, hours, or other working conditions against the employer in any forum, arbitral or judicial.

*In Re D.R. Horton, Inc.*, 357 NLRB No. 184, at *1 (Jan. 3, 2012). *See* 834 F.3d at 980. The Ninth Circuit determined that the NLRB's interpretation of § 7 was consistent with congressional intent and

5

1  adopted the NLRB's decision in accordance with the guidelines regarding review of agency decisions

2  set forth by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.*, 467

3  U.S. 837, 842-43 & n. 9 (1984). 834 F.3d at 980-83; *see also id.* at 982 (citing *NLRB v. J. Weingarten,*

4  *Inc.*, 420 U.S. 251, 260 (1975) for the proposition that "[t]he pursuit of a concerted work-related legal

5  claim 'clearly falls within the literal wording of § 7 that '[e]mployees shall have the right … to engage

6  in … concerted activities for the purpose of mutual aid or protection'"). Furthermore, in light of § 8 of

7  the NLRA making it "an unfair labor practice for an employer … to interfere with, restrain, or coerce

8  employees in the exercise of the rights guaranteed in [§ 7]," the panel in *Morris* reasoned that the

9  defendant's concerted action waiver interfered with the plaintiffs' substantive rights established in § 7

10  and is therefore unenforceable. *See id* at 983-84. The *Morris* panel summarized its reasoning as follows:

11  "[t]he NLRA establishes a core right to concerted activity. Irrespective of the forum in which disputes

12  are resolved, employees must be able to act in the forum together … Arbitration, like any other forum

13  for resolving disputes, cannot be structured so as to exclude all concerted employee legal claims." *Id.* at

14  989.[2]

15       On January 13, 2017, the Supreme Court granted certiorari in *Morris*, *see* 137 S. Ct. 809 (2017),

16  and consolidated it with two other cases from other circuits with similar issues: *Epic Systems Corp. v.*

17  *Lewis*, No. 16-285 (originating in the Seventh Circuit) and *NLRB v. Murphy Oil USA, Inc.*, No. 16-307

18  (originating in the Fifth Circuit). The question presented in *Morris* is "[w]hether the collective-

19  bargaining provisions of the [NLRA] prohibit the enforcement under the [FAA] of an agreement

20  requiring an employee to arbitrate claims against an employer on an individual, rather than collective,

21  basis." *See Ernst & Young, LLP v. Morris*, 2016 WL 4710181. Because *Morris* will be argued during the

22  October 2017 term, the Supreme Court is expected to issue a decision in *Morris* no later than the end of

23  ―――――――――――――――

24  [2] The *Morris* panel additionally devoted a significant portion of its decision explaining why the FAA "does not dictate a
contrary result." *See* 834 F.3d at 984-990. In brief, the panel reasoned that NLRA § 7 falls within the "savings clause" of the

25  FAA, which allows for the applicability of general contract defenses, and therefore, allows for the NLRA and the FAA to be
read in harmony. *See id.*

1 | June 2018.

2 |      Notwithstanding its position that *Morris* does not apply here, Defendant argues that the Court

3 | should stay this case pending the Supreme Court's decision in *Morris* because its position is that neither

4 | party would be harmed by a stay and because a stay would further the interests of judicial economy and

5 | efficiency. ECF No. 38. Plaintiff opposes, contending that he and the putative class would suffer

6 | prejudice if the Court stays the case, that Defendant has not shown that it would be harmed absent a

7 | stay, and that the duration of the requested stay is improper. ECF No. 40.

8 | **A.**    <u>**Standard of Decision**</u>

9 |      "A district court has discretionary power to stay proceedings in its own court under *Landis v.*

10 | *North American Co.*, 299 U.S. 248, 254 (1936)." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir.

11 | 2005); *see also Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) ("A trial

12 | court may, with propriety, find it is efficient for its own docket and the fairest course for parties to enter

13 | a stay of an action before it, pending resolution of independent proceedings which bear upon the case.").

14 | The Ninth Circuit has instructed that in determining whether to grant a stay, "the competing interests

15 | which will be affected by the granting or refusal to grant a stay must be weighed." *CMAX, Inc. v. Hall*,

16 | 300 F.2d 265, 268 (9th Cir. 1962).  These interests include:

17 |     "the possible damage which may result from the granting of the stay, the hardship or

18 |     equity which a party may suffer in being required to go forward, and the orderly course
    of justice measured in terms of the simplifying or complicating issues, proof, and
    questions of law which could be expected to result from a stay."

19 |

20 | *Id.* "[T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go

21 | forward, if there is even a fair possibility that the stay for which he prays will work damage to someone

22 | else." *Landis*, 299 U.S. at 255.

23 | **B.**    <u>**Analysis**</u>

24 |     **1.**    ***Morris* Controls in This Case**

25 |      As a threshold matter, the Court has determined that the question presented in *Morris* is

1   dispositive in resolving Defendant's pending motion to compel arbitration. Defendant's arguments to the

2   contrary are meritless. First, Defendant argues that Plaintiff's invocation of the NLRA at this stage in

3   proceedings is time-barred, pursuant to 29 U.S.C. § 160(b), which provides "[t]hat no complaint shall

4   issue based upon any unfair labor practice occurring more than six months prior to the filing of the

5   charge with the [National Labor Relations Board ("NLRB")]." ECF No. 37 at 10.[3] By its plain language,

6   the six-month statute of limitations in 29 U.S.C. § 160(b) applies to charges filed with the NLRB, and

7   there is no indication in the cases cited by Defendant that the statute of limitations would also apply to

8   bar plaintiffs from making a NLRA-based legal defense against a motion to compel arbitration in a

9   federal civil action. Second, Defendant argues that the NLRB has exclusive jurisdiction to decide

10  whether the DRP violates NLRA § 7, and that this Court therefore lacks jurisdiction to decide the issue.

11  *Id*. at 11. However, it is clear that this Court has jurisdiction over Plaintiff's NLRA § 7 claim because

12  the NLRB has spoken on the parameters of NLRA § 7 in *Horton*, and this case implicates that

13  interpretation. The panel in *Morris* was cognizant of the NLRB's primary role in interpreting the NLRA,

14  as it began its analysis by noting that "[t]he Supreme Court has 'often reaffirmed that the task of

15  defining the scope of [NLRA rights] is for the Board to perform in the first instance as it considers the

16  wide variety of cases that come before it … Considerable deference thus attaches to the Board's

17  interpretation of the NLRA." *See Morris*, 834 F.3d at 980 (internal citations and quotations omitted). As

18  discussed above, the *Morris* panel determined that the NLRB's decision in *Horton* was correct and

19  consistent with congressional intent behind the NLRA. *See id*. at 980-84.[4]

20  _____

21  [3] Pincites refer to CM/ECF pagination located at the top of each page.

22  [4] The Fifth Circuit's decision not to enforce the NLRB decision in *Horton* does not bear on the applicability of *Morris* in this
    case, as this Court is bound by the Ninth Circuit's decision to adopt *Horton* unless and until the Supreme Court reverses
23  *Morris*. *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001) ("Binding authority must be followed unless and until
    overruled by a body competent to do so."); *see also Pataky v. Brigantine, Inc.,* Case No.: 3:17-cv-00352-GPC-AGS, 2017
    WL 1682681, at *5 (S.D. Cal. May 3, 2017) ("Defendant argues that *D.R. Horton* 'has been rejected by most courts outside
24  the Ninth Circuit.' … In so arguing, Defendant ignores the Ninth Circuit's adoption of the NLRB's interpretation of Sections
    7 and 8 of the NLRA in *Morris*.").

25

Third, Defendant argues that *Morris* applies only to arbitration agreements signed as a condition of employment, and therefore does not apply to post-employment agreements to arbitrate claims on an individual basis. ECF No. 37 at 12. Defendant points out that Plaintiff signed two agreements to arbitrate before commencing employment, and that he signed a third agreement after he had already begun working for Defendant. *Id.* In support of its position, Defendant cites *Galvan v. Michael Kors USA Holdings, Inc.*, No. CV 16-07379, 2017 WL 253985, at *9-10 (C.D. Cal. Jan 19, 2017), in which a court in the Central District found that *Morris* did not apply to an arbitration agreement because the plaintiff was not required to sign it as a condition of employment. However, *Galvan* is factually distinguishable from this case, because unlike the DRP at issue here, the arbitration agreement in *Galvan* contained a 30-day opt-out period. *See* 2017 WL 253985 at *9. Furthermore, Defendant offers no legal authority to support the notion that Plaintiff's post-employment arbitration agreement negates the effect of the two pre-employment arbitration agreements he signed that do implicate the NLRA § 7 rights that the Ninth Circuit determined were "substantive" in *Morris*.

Fourth, Defendant argues that the DRP preserves Plaintiff's NLRA § 7 right because it explicitly provides for class action litigation in court under certain circumstances. ECF No. 37 at 12-14. Specifically, Defendant notes that the DRP is distinguishable from the collective action waiver at issue in *Morris* because Defendant's DRP waives only the right to pursue classwide arbitration, and that the DRP "is not an agreement to arbitrate at all costs; it is an agreement to resolve disputes pursuant to a procedural framework that includes internal, administrative, and formal dispute resolution, including in court if necessary." *Id.* at 13. The Court is unpersuaded. Here, the DRP provides that "[e]ach dispute shall be arbitrated on an individual basis." ECF No. 29-2 at 5. This provision is substantively identical to the one in *Morris*, which required employees to pursue their legal claims "exclusively through arbitration, and "arbitrate only as individuals and in 'separate proceedings.'" *See* 834 F.3d at 979. It is apparent in this case that classwide arbitration is not available under the terms of the DRP, and "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for

9

1   concluding that the party *agreed* to do so." *Stolt-Nielsen S. A. v. Animal Feeds Int'l. Corp.*, 559 U.S.

2   662, 684 (2010) (emphasis in original). Therefore, Plaintiff's only option to exercise his NLRA § 7 right

3   of "engag[ing] in other concerted activities for the purpose of … mutual aid or protection," would

4   appear to be class action litigation in court. Although the DRP does provide for class action litigation in

5   court if the collective action waiver is found unenforceable (which it is under *Morris*) and that the DRP

6   therefore would not apply to such a class action, it is logically untenable for Defendant to use this

7   provision to support its position that Plaintiff must therefore be held to individual arbitration of his

8   claims because he is bound by the DRP—either *Morris* applies, the collective action waiver is

9   unenforceable, and Plaintiff may proceed in litigating this case as a putative class action in court, or

10  *Morris* does not apply and Plaintiff must submit to the individual arbitration of his claims pursuant to

11  the DRP. Defendant cannot use the former option to justify compelling the latter.

12          Therefore, for the foregoing reasons, the Court has determined that *Morris* controls in this case.

13  This determination is also relevant to one of the considerations it must undertake in adjudicating

14  Defendant's motion to stay this case—"the orderly course of justice measured in terms of the

15  simplifying or complicating issues, proof, and questions of law which could be expected to result from a

16  stay." *See CMAX*, 300 F.2d at 268. Defendant argues that "[t]he ultimate disposition of *Morris* will

17  simplify the proceedings by settling a legal question that is central to this action … the enforceability of

18  class action waivers in employment arbitration agreements." ECF No. 38 at 14. Plaintiff does not (and

19  cannot) dispute this fact.[5] In its order staying a case substantially similar to this one, a court in the

20  Northern District observed that "[w]hether this case can proceed as a class action turns squarely on the

21

22  _____

23  [5] Instead, Plaintiff argues that "the duration of the requested stay is improper." ECF No. 40 at 11-12. However, because the
    Supreme Court has set *Morris* for oral argument in its October 2017 term and is expected to issue its decision within one year
    of the date of this Order, the Court is unpersuaded by Plaintiff's argument. *See Minor v. FedEx*, No. C 09-1375 THE, 2009
24  WL 1955816, at *1 (N.D. Cal. July 6, 2009) ("The Court interprets this as indication that the stay will not cause damage,
    especially in light of its brief estimated duration of less than a year."). Therefore, the Court finds that the stay in this case is
    of a reasonable duration. *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 864 (9th Cir. 1979) ("A stay should not
25  be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency
    of the claims presented to the court.").

1    outcome of the Supreme Court's review of *Morris*. Regardless of whether the Supreme Court affirms or

2    overrules *Morris*, the issues before the Court will be simplified." *McElrath v. Uber Technologies, Inc.*,

3    Case No. 16-cv-07241-JSC, 2017 WL 1175591, at *6 (N.D. Cal. Mar. 30, 2017). The *McElrath* court's

4    observation applies in this case—if the Supreme Court reverses *Morris*, the Court is likely to grant

5    Defendant's motion to compel arbitration, and if the Supreme Court affirms *Morris*, the Court is likely

6    to deny this motion. The Court therefore finds that the judicial economy factor weighs in favor of

7    granting a stay.

8        **2.      Remaining *CMAX* Considerations: Damage to Plaintiff and Hardship to Defendant**

9        Under *CMAX*, the Court must also consider the damage to Plaintiff if the stay is granted, and the

10   hardship that Defendant will suffer if the stay is denied. *See* 300 F.2d at 268.

11       Plaintiff argues that he and the putative class members will be harmed if the Court stays this case

12   because the stay would delay potential monetary recovery they could receive. ECF No. 40 at 10.

13   Plaintiff also points out that he has not received any discovery from Defendant since this case

14   commenced about one year ago, and that discovery would be delayed further by a stay, as Defendant has

15   sole access to the putative class list and evidence. *Id.*

16       Although Defendant contends that Plaintiff and the putative class members will not be harmed

17   by a "brief stay," ECF No. 38 at 11, the Court concludes that Plaintiff has at least demonstrated a "fair

18   possibility that the stay … [would] work damage" to him and the putative class. *See Dependable*

19   *Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). Plaintiff has alleged that

20   he and the putative class members have been denied wages that Defendant owes to them, and a stay

21   would harm them in the event the Supreme Court affirms *Morris*, because it would delay discovery and

22   monetary damages they could receive if this case resolves in their favor. The damage factor thus weighs

23   against granting a stay.

24       Because there is a "fair possibility" that Plaintiffs could be harmed by a stay, Defendant now

25   bears the burden of showing "hardship or inequity" in being required to move forward. *Landis*, 299 U.S.

1   at 255. Defendant argues it has met this burden because absent a stay, it would be forced to incur

2   significant expenses associated with litigating claims that may ultimately be subject to arbitration if the

3   Supreme Court reverses *Morris*. ECF No. 38 at 12. In support, Defendant notes that discovery in private

4   arbitration would be less burdensome than it would be in class action litigation, and that both parties

5   would incur potentially unnecessary expenses in litigating a claim that could be rendered moot within a

6   year. *Id.* at 12-13.

7          The Court finds that Defendants have met this burden. The hardship faced by Defendant here

8   would go beyond "being required to defend a suit, [which] without more, does not constitute a 'clear

9   case of hardship of inequity' within the meaning of *Landis.*" *See Lockyer*, 398 F.3d at 1112. It would be

10  a waste of the Court's and the parties' time and resources to allow broad class discovery in a putative

11  class action lawsuit when it is still not clear whether or not the collective action waiver in the DRP is

12  enforceable. *See Campanelli v. ImageFIRST Healthcare Laundry Specialists, Inc.*, Case No. 15-cv-

13  04456-PJH, 2017 WL 2929450, at *4 (N.D. Cal. July 10, 2017). While the Court declines to comment

14  on the likelihood of the Supreme Court reversing *Morris*, the Court finds that the timing of the *Morris*

15  proceedings ultimately supports Defendant's position, as the briefing in *Morris* is well underway and a

16  decision will issue in less than a year. *See Alvarez v. T-Mobile USA, Inc.*, No. CIV. 2:10-2373 WBS

17  GGH, 2010 WL 5092971, at *2 (E.D. Cal. Dec. 7, 2010) ("It would be burdensome for both parties to

18  spend time, energy, and resources on pretrial and discovery issues, only to find those issues moot within

19  less than a year."). The Court acknowledges that district courts in the Ninth Circuit have gone both ways

20  on this issue, but observes that most of the decisions denying stays were issued several months earlier

21  than the date of this Order and when the timing of the Supreme Court's decision in *Morris* was less

22  certain and further away.[6] Given the timing of the *Morris* proceedings in relation to the proceedings in

23  _____

24  [6] *Rivera v. Saul Chevrolet, Inc.*, No. 16-cv-06966-LHK, 2017 WL 1862509 (N.D. Cal. May 9, 2017); *Daugherty v. SolarCity Corp.*, No. C 16-05155 WHA, 2017 WL 386253 (N.D. Cal. Jan 26, 2017); *Cashon v. Kindred Healthcare Operating, Inc.*,
25  2016 WL 6611031 (N.D. Cal. Nov. 9, 2016).

this case, the Court is more persuaded by the decisions that have granted stays and cited the timing of *Morris* as relevant to the hardship faced by defendants.[7] Thus, the hardship factor weighs in favor of granting a stay.

Overall, the *CMAX* factors incline the Court to grant Defendant's motion to stay this case pending the Supreme Court's decision in *Morris*. While Plaintiff has demonstrated that he and the putative class members could be harmed by this stay, the hardship to all parties in moving forward with class litigation at this juncture and the orderly course of justice ultimately persuade the Court to exercise its discretion and stay this case.[8]

### CONCLUSION AND ORDERS

For the foregoing reasons, the Court GRANTS Defendant's motion to stay (ECF No. 38) and will HOLD IN ABEYANCE Defendant's motion to compel arbitration (ECF No. 29) until the Supreme Court issues its decision in *Morris*. Within fourteen (14) days of the Supreme Court's decision in *Morris*, the parties must file a joint status report of how they wish to proceed in light of that decision.

IT IS SO ORDERED.

Dated:   __July 21, 2017__          _____/s/ Lawrence J. O'Neill_____
                                    UNITED STATES CHIEF DISTRICT JUDGE

---

[7] *McElrath*, 2017 WL 1175591 at *6; *Campanelli*, 2017 WL 2929450, at *4-5

[8] The Court therefore need not address the parties' arguments regarding Defendant's intended interlocutory appeal, as the Court will not rule on Defendant's motion to compel until the Supreme Court decides *Morris*.